# HAMILTON DEVELOPMENT COMPANY

## V.

# BROAD ROCK CLUB, INC., ET AL.

Record No. 930939

June 10, 1994

Present: All the Justices

*John N. Clifford (Clifford & Duke*, on briefs), for appellant.
*Gregory R. Waddell*, for appellee Broad Rock Club, Inc.
No brief or argument on behalf of appellee Balzer & Associ-
ates, Inc.

JUSTICE COMPTON delivered the opinion of the Court.

In this action for trespass to real estate, we consider issues re-
lating to an award of punitive damages.

Appellee Broad Rock Club, Inc., the plaintiff below, and appel-
lant Hamilton Development Company, the defendant below,
owned adjacent parcels of realty in Chesterfield County. On April
28, 1989, the plaintiff's president, David Hull, was informed by
defendant's president, Bob E. Hodges, that defendant had tres-
passed on a .176-acre parcel owned by plaintiff that adjoined de-
fendant's residential development named Bexley West, Section 4.
Hull and Hodges met on the site and found that the subject prop-
erty had been cleared of trees and that both timber and soil be-
longing to plaintiff had been carried away.

Subsequently, the plaintiff filed this action against defendant
for common law trespass, seeking both compensatory and punitive
damages. The defendant filed a third-party motion for judgment
against Balzer & Associates, Inc., a surveying and engineering

firm, seeking indemnification upon the ground that the third-party defendant's negligent preparation of a plat caused the trespass.

In a January 1993 trial, a jury found in favor of the plaintiff against the defendant, awarding $20,000 in compensatory damages and $200,000 in punitive damages. The jury also found in favor of the third-party defendant. Overruling defendant's post-trial motion, the court entered judgment on the verdict and dismissed the third-party claim. We awarded the defendant this appeal, limited to consideration of issues relating to the punitive damage award. The appeal was refused as to assignments of error relating to the third-party claim.

The appellate record does not contain a transcript of the testimony. We must rely upon a Rule 5:11 written statement of the facts, which incorporates the exhibits admitted in evidence.

Viewed in the light most favorable to the plaintiff, the party prevailing below, the evidence shows that about one year before the plaintiff learned of the trespass, defendant's president Hodges asked the surveyor to prepare a plat to straighten an inverted end lot line for Parcel 2 of Bexley West, Section 4. Hodges told Jo Ann Mulligan, the surveyor's employee, that the defendant would use a portion of a lot adjoining Parcel 2 "to straighten out" the line. Mulligan "immediately corrected" Hodges and informed him that the .176-acre parcel that was needed to straighten the Parcel 2 line was owned by the plaintiff. Hodges responded "that it did not matter, [the defendant] would get it from whoever owned it."

Later, Hodges informed Mulligan that defendant had acquired the subject property by deed, which was recorded in April 1988. A subdivision plat was prepared as requested by Hodges, and submitted to the county planning department. About four months before the plaintiff learned of the trespass, the county real estate assessor's office notified Mulligan that the plaintiff owned the .176-acre parcel and that it was not owned by the defendant. Mulligan communicated this information to defendant orally and by written memorandum dated February 20, 1989. Documents received as exhibits show that the subject property was cleared and graded during a seven-day period ending the day plaintiff learned of the trespass.

The plaintiff presented expert testimony that the value of the "fill dirt and soil removed from the property" was between $26,430 and $29,300. Other testimony revealed that the subject

property "was covered with large trees" and that "mature trees" were removed by the defendant.

During presentation of defendant's case, Charles E. Ayres, Jr., an attorney and the other principal of the defendant corporation, testified that he actively participated in the development of Section 4 of Bexley West and that "at some point it was decided to square up" Parcel 2, a lot Hodges "wanted to use . . . for himself." Hodges and Ayres chose to utilize a portion of a lot in Bexley West, Section 1, adjacent to the subject property, which, according to Ayres, was owned by Bexley Associates of Richmond, Inc., of which he and Hodges were two of the three principals. The Ayres law firm prepared the deed conveying the subject property to defendant without performing a title examination but relying solely on the surveyor's plat. Ayres denied being told orally or in writing by Mulligan that the plaintiff owned the subject property.

During cross-examination of Ayres, an "unaudited" financial statement of defendant for the year ending December 31, 1989 was received in evidence. Defendant's trial counsel "objected to introduction of the records solely on the grounds that the records were not relevant to the case," according to the written statement of facts.

During his testimony, Hodges denied "ever being told" prior to April 28, 1989 that the subject property was owned by plaintiff. The defendant also offered testimony that the property was graded and that "some" dirt was removed, but not as much as claimed by the plaintiff's witnesses.

On appeal, the defendant impermissibly has altered the language of an assignment of error to argue a question never presented to the trial court. The appeal was limited to consideration of assignments of error Nos. 1, 4, and 5. Assignment of error No. 1, as set forth in the petition for appeal and as recited in our mandate awarding the appeal, reads as follows:

"1. The Circuit Court erred in allowing evidence of Hamilton's financial condition for the year after the alleged tresspass [sic] occurred."

Assignment of error No. 1 as shown in the appendix, printed under the defendant's supervision, and as repeated in defendant's opening brief, reads as follows:

"1. The Circuit Court erred in allowing evidence of Hamilton's financial condition for the year after the alleged tresspass occurred to be presented before the jury found Hamilton liable."

The change that evolved during the appellate process in assignment of error No. 1 is obvious; such skewing of the language of the original assignment is not allowed.

■ Appeals are awarded based on assignments of error, a required part of every petition for appeal. Rule 5:17(c). The language of an assignment of error may not be changed, especially when the assignment is set forth in the order of this Court awarding the appeal. The only time when the wording of an assignment of error does not remain an integral part of the appeal is on the rare occasion when this Court, in an order, posits the issue to be debated, and that did not happen in this case.

The metamorphosis of this assignment enabled defendant to argue that the trial should have been bifurcated, that is, in defendant's words on brief, "the financial data should not have been submitted to the jury until after it had first decided if in fact Hamilton had done anything wrong." Objection on this basis was not made at trial, and we will not entertain it for the first time on appeal. Rule 5:25.

■ The only objection made at trial was that the financial records were not "relevant;" the trial court properly overruled the objection. Evidence of the financial condition of a defendant is relevant on the issue of punitive damages and properly may be considered by the jury. *Weatherford* v. *Birchett*, 158 Va. 741, 747, 164 S.E. 535, 537 (1932).

■ Reverting to the gist of original assignment of error No. 1, the defendant also argues that the 1989 financial records, covering the period after the trespass, did not accurately show defendant's "financial status . . . at the time of the incident," nor "did they show the accurate status at the time of trial, some three years after the period of the financial records," nor "did they show an accurate overall or average record of the corporation's financial condition or profit." The ready answer to this argument, given the fact we already have decided the records introduced were relevant, is that the defendant had the opportunity to introduce evidence relating to the time periods it now claims were not covered by the records offered by the plaintiff, but failed to do so. Thus,

we hold there was no error in connection with receipt of the financial records.

Next, in support of assignment of error No. 4, defendant argues that the evidence was insufficient to support an award of punitive damages. We do not agree.

■ Punitive damages, the purpose of which is not so much to compensate the plaintiff but to punish the wrongdoer and to warn others, may be recovered "only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others." *Giant of Virginia, Inc.* v. *Pigg*, 207 Va. 679, 685, 152 S.E.2d 271, 277 (1967). *Accord Puent* v. *Dickens*, 245 Va. 217, 219, 427 S.E.2d 340, 342 (1993).

■ In the present case, although the evidence was conflicting, there was credible evidence to support the jury's finding assessing punitive damages. Twelve months before the trespass, defendant's principals had been warned that the plaintiff owned the property necessary to "square up" the lot Hodges wanted for his personal use. Nevertheless, determined to "get it from whoever owned it," defendant's principals arranged to acquire plaintiff's land, without performing a title examination, by use of another corporation controlled by them. Subsequently, and after ignoring another notice that plaintiff owned the subject property, defendant committed the trespass. This conduct demonstrates that defendant acted with such recklessness or negligence to evince a conscious disregard of plaintiff's property rights.

Finally, in support of assignment of error No. 5, the defendant contends that the trial court erred in confirming the punitive damage award, implicitly arguing that the award was excessive in amount. Reciting facts that are not in the record dealing with "a deep depression" in the "residential development industry" subsequent to the trespass and stating that "any judgment will put Hamilton out of business," defendant argues that the "$20,000 compensatory damage award is more than sufficient to punish it." Observing that the punitive award is ten times the size of the compensatory award, defendant contends that its motion for a reduction of the punitive award should have been granted. We do not agree.

■ Ordinarily, a damage award fixed by a jury after a properly conducted trial and approved by the trial judge is held to be inviolate against disturbance by the appellate court. *The Gazette, Inc.* v. *Harris*, 229 Va. 1, 48, 325 S.E.2d 713, 744, *cert. denied sub*

*nom. Fleming* v. *Moore*, 472 U.S. 1032 (1985). There is no rigid standard for measuring punitive damages; the amount of such an award is largely a matter within the discretion of the fact finder. *Philip Morris Inc.* v. *Emerson*, 235 Va. 380, 414, 368 S.E.2d 268, 287 (1988).

■ In *Emerson*, we adopted the standard of appellate review for punitive damages that we previously had adopted in *Modaber* v. *Kelley*, 232 Va. 60, 348 S.E.2d 233 (1986), for compensatory damages. 235 Va. at 414, 368 S.E.2d at 287. In *Modaber*, we said that the appellate court must declare a verdict excessive and rule that the trial court had abused its discretion in refusing to set it aside "whenever the size of the award shocks the conscience of the Court and creates the impression that the jury was biased in favor of the plaintiff or prejudiced against the defendant or has misconceived or misunderstood the facts or the law, or if the award is so out of proportion to the plaintiff's [damages] as to suggest that it is not the product of a fair and impartial decision." 232 Va. at 69, 348 S.E.2d at 238.

■ Applying this standard, we hold that the punitive award is not excessive and should not be reduced. The defendant acted with blatant recklessness in seizing a neighbor's land, clearing it, grading it, and appropriating it for its own use, resulting in compensatory damages of $20,000. The financial data shows that, during the year of the trespass, the defendant corporation had total income from "lot sales" of approximately $1.2 million and that the defendant's two principals received approximately $670,160 in "distributions" from the corporation. Based on this record, we cannot say that the size of the award is shocking or that it creates the impression of prejudice, misunderstanding, unfairness, or partiality on the jury's part.

Accordingly, the judgment of the trial court will be

*Affirmed.*

JUSTICE WHITING, concurring in part and dissenting in part.

I agree with the majority's holding with the exception of its affirmance of the punitive damage award. In my opinion, this award is so destructive to the defendant as to indicate that it was not the product of a fair and impartial decision. *The Gazette, Inc.* v. *Harris*, 229 Va. 1, 51, 325 S.E.2d 713, 746-47 (1985).

The majority recognizes that we should consider the net worth of the defendant in deciding whether the punitive damage award is excessive. Although the purpose of punitive damages is "to punish the defendant for [its] conduct and to serve as a warning to others not to engage in similar activity," it should not be so large as to be destructive. *The Gazette*, 229 Va. at 50, 325 S.E.2d at 746. In *The Gazette*, we indicated that a $250,000 damage award with interest from the date of the tort was destructive and, therefore, excessive even though the defendant estimated his net worth as close to one million dollars. *Id.* at 51, 325 S.E.2d at 746-47.

Here, the evidence indicates that the defendant's net worth is considerably less than one million dollars. The only evidence of its assets and income contained in the record are two schedules prepared by its certified public accountant. One statement shows that, for the year ending December 31, 1989 (the year of the tort), the corporation's "Gross profit on lot sales" was $350,289.03 (the figure used by the majority). However, the statement also revealed that the company's net income, excluding distributions to its officers or stockholders, was $167,597.48. The latter, not the former, is the figure I believe that the majority should have used in considering the corporation's income from lot sales for 1989.

Additionally, the majority notes that, as of December 31, 1989, the corporation's two principals had received $670,160 in "distributions" from the corporation. However, these distributions could not have come from corporate income earned during the year of the tort since the corporation's net profit for that year was only $167,597.48. Moreover, the only evidence of the net worth of the corporation at the end of 1992 was that shown on its balance sheet of $190,488.58.

Given all these circumstances, I would hold that the $200,000 punitive damage award is excessive. Accordingly, I would reverse the award of punitive damages and remand the case, with direction to the trial court to require the plaintiff either to remit a substantial amount of his punitive damage recovery or to submit to a new trial confined to the issue of punitive damages.