# Thomas R. Black, et al.

## v.

# Vernon A. Eagle, et al.

Record No. 931084

June 10, 1994

Present: Carrico, C.J., Compton, Whiting, Lacy, Hassell and Keenan, JJ.,
and Poff, Senior Justice

*Charles D. Bennett, Jr.,* for appellants.

*Robert C. Wood, III (Edmunds & Williams,* on brief), for appellees.

*Amicus Brief:* (James S. Gilmore, III, Attorney General; Roger L. Chaffe, Senior Assistant Attorney General; Frederick S. Fisher, Assistant Attorney General, on briefs), in support of appellants.

JUSTICE COMPTON delivered the opinion of the Court.

This is an appeal in a suit brought under Code § 41.1-16 to sell "waste and unappropriated" land located on House Mountain in Rockbridge County. According to the record, House Mountain "is a striking natural feature" that provides "the scenic backdrop" to the west for the city of Lexington. The record shows that generations of citizens, including college students, "have enjoyed hiking and climbing, nature study, hunting, and other outdoor activities on the mountain."

The facts, which are undisputed, will be summarized along with the material proceedings, some of which are rather tangled. In 1985, appellees Vernon A. Eagle and his wife bought 100.36 acres of land at the foot of the southeastern slope of House Mountain. Later that year, Eagle sought to purchase the property in controversy. The almost triangular parcel contains 103.270 acres and is located above the Eagles' property on the mountainside. David A. White owned the land, according to a composite plat that Eagle had seen. White refused to sell. In 1986, Eagle, who is not an attorney at law, examined some of the county land records and began to question whether White actually owned the 103-acre triangular tract.

In late Spring 1988, property owned by White on House Mountain "came on the market for sale." White purportedly owned approximately 919 acres of the mountain, including the 103-acre tract, and offered to sell the entire acreage for $325,000.

The Eagles and other owners of land on the mountain wished to insure preservation of the land in its natural state and prevent its

development. Commencing in July 1988, a series of meetings was held attended by persons interested in the White property, including Eagle; Laurence A. Mann, a Lexington attorney; and members of the Rockbridge Area Conservation Council (RACC), an organization concerned with continuing the traditional uses of the mountain "while emphasizing the preservation of the natural features and essential character."

During the first meeting, Eagle, who was a member of RACC's board of directors, told the group that, in his opinion, White did not own the 103-acre parcel and that he (Eagle) "had long had an interest in it." In July and August 1988, Eagle told White's real estate agent that White did not own the parcel.

In the meantime, RACC formed a special committee to conduct a drive to raise funds to purchase the White property. Mann, representing RACC, obtained an option on July 8, 1988 to purchase the entire property for the asking price. This was an effort "to save the property" pending the fund-raising effort.

Because there was concern that RACC could not "carry the whole project to fruition," Mann involved the Virginia Outdoors Foundation (VOF) in the effort to purchase the property. VOF, a state agency, "is established to promote the preservation of open-space lands and to encourage private gifts of money, securities, land or other property to preserve the natural, scenic, historic, scientific, open-space and recreational areas of the Commonwealth." Code § 10.1-1800.

VOF, through its Executive Director, Tyson Van Auken, agreed to "pick up" RACC's option. Subsequently, the option was transferred to VOF by an October 1988 assignment giving VOF the right to purchase the White property. At this time, neither Mann nor anyone on behalf of RACC or VOF had examined the title to the 919 acres.

During the period December 1988 to February 1989, Eagle conducted a thorough title examination of much of the House Mountain land and "managed to account for almost all of it" by tracing title back to grants and patents from the Commonwealth. During the course of this work, Eagle encountered Mann in the record room of the circuit court clerk's office and advised Mann that the 103-acre triangle "just doesn't show up anywhere." Eagle also determined that White never had paid taxes on the parcel.

In a March 17, 1989 letter to White's realtor, Mann stated "there have been some distressing developments" regarding

White's House Mountain property. Mann, expressing confidence "that this project will go to closing," suggested that White convey the 103-acre tract "now" as an "advance sale prior to the exercise of the option." Mann later testified that this was an effort to "stall Mr. Eagle" by establishing title in VOF. Within two weeks, White purportedly conveyed the 103-acre parcel to VOF by quit-claim deed.

Subsequently, White and VOF executed an agreement in April 1989 in which VOF exercised the option and promised to purchase the White property, including the 103-acre parcel. No title examination had yet been undertaken by anyone for RACC or VOF. Van Auken testified that, although he was aware of the questions raised about the title to the 103-acre parcel, he and the assistant attorney general advising him "simply made an administrative decision that the title has got to be . . . either in the Commonwealth or with Mr. White," and that VOF would proceed with acquiring the property as agreed.

In the meantime, Eagle, convinced that "no chain of title existed" for the 103-acre parcel, consulted an attorney at law for advice. Counsel advised him to proceed under Code § 41.1-16 to have the parcel sold as "waste and unappropriated" land.

From that time until the present suit was filed in October 1990, Eagle, Mann, Van Auken, and White's realtor attempted to reach a compromise settlement of the matter. As part of the negotiations, Eagle emphasized that his sole interest in the disputed parcel was to preserve and protect the property. During these discussions, Eagle offered to provide VOF with a conservation easement in the event he obtained fee simple title to the parcel. The evidence showed that VOF routinely acquires such easements to protect open-space areas that are privately owned.

Eagle was mainly interested in a tract of 34.84 acres that was a part of the 103-acre parcel. During the negotiations, Eagle proposed to Mann, RACC, and Van Auken that if VOF conveyed the 34-acre tract to him, then he would execute a conservation easement to VOF and make a cash donation to the "House Mountain fund," reiterating his desire "to protect the land, and to clear up the title." The negotiations failed.

In May 1989, at the request of VOF, the Attorney General appointed Anita Filson, a Lexington attorney, to research and report on the title to the 103-acre parcel. By deed dated July 5, 1989, White conveyed the 919 acres, including the 103-acre parcel, to

VOF. VOF obtained a title insurance policy that excluded the 103 acres. VOF paid White the full purchase price and was reimbursed approximately $150,000 from RACC's fund-raising efforts. Filson had not completed her title examination at the time of the sale. In December 1989, she reported to the Attorney General that she had "exhausted all the logical leads" in an effort to identify "any prior owner of this tract." She concluded "that the land has probably never been granted out of the Commonwealth."

In October 1990, the present suit was filed under Code § 41.1-16. As pertinent, the statute provides:

"Any citizen, resident of this Commonwealth, who has reason to believe that there are waste and unappropriated lands in this Commonwealth . . . , shall have the right to file a proceeding in the name of the county or city seeking the sale and disposition of such land. . . . The proceeding shall be instituted by motion signed by the party who institutes the proceeding, or on his behalf . . . . Each landowner adjoining the tract in question shall be made a party to the proceedings."

"He shall file with the motion a copy of a plat prepared by a licensed land surveyor giving the metes and bounds of the land alleged to be waste and unappropriated. A copy of the motion and plat shall be served upon each of the landowners adjoining the tract in question."

In a "Motion To Sell Unappropriated Lands," the Eagles named the County of Rockbridge and themselves as complainants and VOF and Eugene R. Hostetter as respondents. The Eagles sought sale of the 34-acre tract, of which VOF and Hostetter were adjoining landowners. The Eagles asked that the tract "be determined to be unappropriated property" and that it "be sold as provided by law." Code § 41.1-18 specifies that "on motion of any party the sale of such land shall be public" and that the proceeds, after payment of costs and expenses, "shall be paid into the treasury of the county or city, as the case may be."

Hostetter filed an answer taking "no position" on the relief requested in the suit. He died during the course of the proceedings and eventually one Timothy Rogers Smith, Hostetter's devisee, was substituted as a party respondent.

The then Attorney General, on behalf of VOF, filed a motion to dismiss asserting that the property was not "waste and unappropriated land." She also asserted that the Eagles "are equitably estopped from asserting interests adverse to the Foundation because Complainant Vernon A. Eagle was a member of the Board of the Rockbridge Conservation Council . . . the original holder of the option to purchase the subject real estate." The Attorney General asserted, "Given . . . Eagle's prior knowledge of the status of the parties and of the property, one would have thought, in equity, that he would have expressed his interest in the property prior to the Foundation's expenditure of funds to purchase the disputed parcel." The Attorney General also asserted that the Commonwealth "and its political subdivision," VOF, are entitled to sovereign immunity.

After the trial court denied the motion to dismiss and VOF filed an answer, the County filed a petition asking that the net proceeds of any sale of the subject property be paid to the County's treasury.

On December 18, 1992, the trial court conducted an ore tenus hearing. The only parties appearing were the Eagles and VOF. By agreement, VOF presented its evidence first in an attempt to establish the validity of its title. The parties had produced approximately 50 exhibits during pretrial discovery; these exhibits were received in evidence by agreement.

At the conclusion of VOF's evidence, the trial court sustained a motion for summary judgment made on behalf of the Eagles. The court ruled from the bench that Eagle "is not estopped here" because "he actually is the one that discovered the non-existence of the title to this property. It was not something he did as an insider on the board." The court noted that the evidence failed to show that Eagle's "position on the board brought any benefit to him."

The court also ruled that White failed to perfect any title to the subject property by adverse possession and, further, that the property had "never been properly entitled to anybody." The court directed that an order be prepared for sale of the 34 acres.

At that point in the hearing, the Attorney General moved that the entire 103-acre parcel be included in the sale. The court responded that its "finding pertains to the whole 103 acres," and indicated, without objection by the Eagles, that the remainder of the 103 acres be sold. The trial court again rejected the Attorney General's sovereign immunity argument.

On February 12, 1993, the trial court entered an order adjudicating the principles of the cause holding that the 34 acres as well as the remaining part of the 103 acres, except a small part owned by Hostetter, "have never been patented or set apart for a specific purpose by the Commonwealth." The order further recited that VOF acquired no interest in the 34 acres or the remainder tract, and that such property is waste and unappropriated land subject to sale.

Noting a written motion filed by the Attorney General following the hearing to expand the sale to include the remainder tract and to add new parties because they adjoined the remainder tract, the order also provided for appointment of a special commissioner to conduct a public sale.

Accordingly, appellants Thomas R. Black, Thomas H. Black, and Rebecca Black Bennett (collectively, the Blacks) were joined as parties. On March 15, 1993, VOF filed a notice of appeal. Two days later, the new parties filed an answer stating that they were not "informed of the pendency of this action until now" because they were not served with the initial Motion instituting the suit. The Blacks, implicitly denying the allegations of the Motion, stated they did not "wish to disrupt the proceeding by causing a full rehearing. Instead they generally accept the recitation of facts included in the Court's . . . Order dated February 12, 1993, and seek the right to submit argument or memoranda, with reservation of the right to present only supplementary new evidence." A week later, the Blacks filed a praecipe asking the clerk of court "to place the case back on the docket . . . for supplementary proceedings."

Thereafter, an issue arose between the County and the Commonwealth about the disposition of the proceeds of sale. On May 5, 1993, the trial court entered an order declaring unconstitutional that portion of Code § 41.1-18 providing for the proceeds of sale to be paid to the County. The court ruled that this provision is in conflict with Article VIII, Section 8, of the Constitution of Virginia, which provides that the proceeds "of all waste and unappropriated lands" shall be set apart and paid to the Literary Fund. The court also stayed the order directing the sale "until the appeal is determined."

Counsel for the Blacks noted objection to the May 5 order with the following statement: "To preserve my clients' right to appeal, I object to the Court's holding that the subject property is 'waste

and unappropriated' and thus subject to sale. I object to that holding as stated in the order of February 12, 1993, to which we were not parties, and also, as used, implicitly, to support the instant order. Otherwise, I agree." No supplementary hearing was held after the Blacks filed their answer and the Blacks filed a notice of appeal on May 14, stating they appealed "the decision . . . entered February 12, 1993, and reaffirmed by final order entered May 5, 1993."

In May 1993, the Attorney General filed a petition for appeal on behalf of VOF, naming the County, the Eagles, Smith, and the Blacks as respondents. VOF assigned error to the trial court's ruling on sovereign immunity and to the court's "holding that land which an agency of the Commonwealth bought and occupied for a public purpose pursuant to its statutory authority was waste and unappropriated."

On August 4, 1993, the Blacks filed a petition for appeal assigning only two errors: "1. The trial court erred in finding Eagle was not equitably estopped even though he at least shifted from a fiduciary corporate director's position to a position favoring himself in competition with the corporation;" and "2. The Trial Court erred in labelling the land 'waste and unappropriated' even though it was maintained as a recreation area by VOF, an agency of the State, under a plan for quieting title."

On August 12, 1993, this Court refused VOF's petition for appeal. In December 1993, this Court awarded the Blacks the present appeal.

In February 1994, during the pendency of this appeal, the Attorney General on behalf of VOF filed a brief amicus curiae raising precisely the same issues raised in VOF's petition for appeal that was refused in August 1993. On the same day, RACC filed a brief amicus curiae addressing the issues raised by the Blacks.

A number of procedural problems stem from the tangle of this proceeding. The most obvious is that the appellants, the Blacks, were not parties to the suit when the trial court adjudicated the principles of the cause. This problem has not been directly addressed by the Eagles, although they have filed several motions to dismiss and still urge the Court that the appeal should not have been awarded.

Because of the peculiar circumstances in this proceeding, we refuse to hold that the Blacks are not proper parties appellant. From the moment they were added as parties, they asked to be

heard and for a supplemental hearing, which was never granted. Throughout the proceedings after they were added, they took the position that the order ruling on the statute's constitutionality, from which they appealed, implicitly reaffirmed the trial court's prior ruling on the merits of the cause. Accordingly, we hold that the Blacks are persons aggrieved within the meaning of Code § 8.01-670(A) and are entitled to appeal. *See Jones v. Rhea*, 130 Va. 345, 361-62, 107 S.E. 814, 820 (1921) (litigant who seeks to become a party, and is entitled to become a party to proceedings in which he is interested, and is rejected, should be regarded, for purposes of appeal, "as possessing the status of one who is a formal party to the proceedings in which his rights and interests are being litigated").

■ Next, the issue of sovereign immunity has been raised in this appeal. We will not address it further because it has been finally decided against the Commonwealth in the rejection of VOF's appeal. We will not revisit that decision as the result of an amicus brief filed by the Attorney General in this, a separate appeal in the same case.

■ Moreover, we reject the Blacks' effort to have sovereign immunity revisited. On appeal, the Blacks impermissibly have supplemented their assignments of error. In their petition for appeal, neither of the two assignments of error mentioned sovereign immunity. Yet, printed in the appendix, pursuant to the Blacks' designation, is a third assignment of error relating to sovereign immunity. Appeals are awarded based on assignments of error and the language of the assignments may not be changed after the appeal is awarded. *Hamilton Dev. Co. v. Broad Rock Club, Inc.*, 248 Va. 40, 44, 445 S.E.2d 140, 143 (1994), decided today.

■ Next, the Blacks present an argument ostensibly drawing on their assignment of error asserting that Eagle was "equitably estopped" from obtaining relief in this suit. The evidence utterly fails to establish all the elements of equitable estoppel, that is, representation, reliance, change of position, and detriment, even assuming that an estoppel can operate in this case in favor of the Blacks. But the Blacks do not argue the elements of equitable estoppel. Instead, their argument dwells entirely on the law relating to the fiduciary duty owed by a corporate director to the corporation. The assignment of error does not sufficiently reach the issue argued, and we will not address it further. "Only errors assigned

in the petition for appeal will be noticed by this Court." Rule 5:17(c).

■ The only substantive issue that we are able to address is whether the land is waste and unappropriated within the meaning of Code § 41.1-16 (the Eagles have not argued that this issue has been precluded by the ruling on the same issue in VOF's appeal). As a general rule, all lands that have never been patented are to be considered waste and unappropriated, susceptible to location and to being sold under the statute. *French* v. *Bankhead*, 52 Va. (11 Gratt.) 136, 168 (1854). *See James River and Kanawha Power Co.* v. *Old Dominion Iron and Steel Corp.*, 138 Va. 461, 472, 122 S.E. 344, 347 (1924).

The Blacks' argument is that the property has been appropriated due to the public's use of the land, White's claim of possessory rights, the quitclaim deed, and the subsequent deed of White's entire House Mountain property. We disagree.

■ The evidence is clear that the subject property has never been titled by grant or patent from the Commonwealth. White had no title to the 103 acres and thus had nothing to convey to VOF. The mere fact of public use and a claim of possessory rights does not provide anyone, including VOF, with a valid claim of ownership of land of this type in disregard of the law relating to waste and unappropriated land. Hence, we hold that the subject property is such "waste and unappropriated" land within the meaning of Code § 41.1-16.

Consequently, the judgment appealed from will be affirmed and the cause remanded for such further proceedings as may be necessary to accomplish the sale of the subject property.

*Affirmed and remanded.*