## CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

Gerald Wilkins

v.

Peninsula Motor Cars, Inc.

August 8, 2002

Case No. (Law) 29484-EH

BY JUDGE EDWARD L. HUBBARD

This matter came on for trial with a jury June 11, 2002, and two verdicts were returned for the Plaintiff against the Defendant. Verdict number one was under the Virginia Consumer Protection Act (VCPA) and found that the Defendant violated the Virginia Consumer Protection Act and said violation was willful and, as a result, Plaintiff's actual compensatory damages should be increased to $12,000. Verdict number two was under a fraud claim and found the Defendant committed fraud and caused the Plaintiff $1,862.86 in compensatory damages and in addition awarded $100,000 in punitive damages to Plaintiff. Defendant made several post-trial motions which will be addressed in the order presented in Defendant's Motion to Set Aside Jury Verdict and/or for Remittitur.

I. *There existed insufficient evidence to support the verdict on the fraud and VCPA causes of action and Defendant's motion made at the conclusion of the Plaintiff's case and at the close of all the evidence should have been granted.*

"Fraud, whether actual or constructive, is never presumed and must be strictly proved as alleged." *Henderson v. Henderson*, 255 Va. 122, 126 (1998) (citing *Poe v. Voss*, 196, Va. 821, 827 (1955); *Martin v. Williams*, 194

Va. 437, 445-46 (1952)). "An allegation of fraud requires a showing by clear and convincing evidence of an intentional and knowing misrepresentation of a material fact, made with the intent to mislead, and relied upon by another to his or her detriment." *Flippo v. CSC Assocs. III, L.L.C.*, 262 Va. 48, 66 (2001) (citing *Elliott v. Shore Stop, Inc.*, 238 Va. 237, 244 (1989)).

The defendant asserts that the same holds true for a cause of action under the VCPA. Citing *Lambert v. Downtown Garage, Inc.*, 262 Va. 707, 714 (2001), the defendant states that in order to establish a violation of the VCPA, there must be proof of a knowing and deliberate decision not to disclose a material fact. The Court noted that, "concealment, whether accomplished by word or conduct, may be equivalent of a false representation." *Id.* at 718 (quoting *Spence v. Griffin*, 236 Va. 21, 28 (1988); accord *Van Deusen v. Snead*, 247 Va. 324, 328 (1994)). Nowhere in its opinion does the court state that this evidence must be proved by clear and convincing evidence. Still, the defendant argues that the evidence adduced at trial failed to support elements of either common law fraud or a violation of the VCPA.

In response, the plaintiff argues that the evidence presented at trial revealed that defendant promised that the vehicle was new despite the fact that it knew that the vehicle was used. Furthermore, the plaintiff points out that the defendant admitted in its deposition, which was read to the jury, that its business practice was never to show a title to a purchaser prior to sale in order to make the odometer disclosures. The plaintiff contends that this admission reveals that the defendant's failure to disclose the prior titling of the vehicle to the plaintiff was not an inadvertent error, but rather an intentional act.

Pursuant to Virginia Code § 8.01-430, a trial court is empowered to set aside a civil verdict if the verdict is contrary to the evidence or without evidence to support it. See *Lane v. Scott*, 220 Va. 578, 581 (1979).

> "[This power] can only be exercised where the verdict is plainly wrong or without credible evidence to support it. If there is a conflict in the testimony on a material point, or if reasonable men may differ in their conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given the testimony, the trial judge cannot substitute his conclusion for that of the jury merely because he would have voted for a different verdict if he had been on the jury. The weight of a jury's verdict, when there is credible evidence upon which it can be based, is not overborne by the trial judge's disapproval. *Commonwealth v. McNeely*, 204 Va. 218, 222 (1963).

*Id.* at 581-82.

The record does not reflect that the jury's verdict was plainly wrong or that the verdict was without credible evidence to support it. The jury had the opportunity to weigh the evidence introduced at trial and it appears that the jury was properly instructed with respect to both the VCPA and fraud. For these reasons, I find the evidence to be sufficient to support the jury's verdict and deny Defendant's motion to set aside on this ground.

II. *Plaintiff must now elect between the remedies under the Virginia Consumer Protection Act and his fraud cause of action.*

Under the Virginia Consumer Protection Act, a prevailing party may recover for a willful violation up to three times its actual damages or $1,000, whichever is greater. Since this amount exceeds actual damages, it is obvious that the amount above the actual damages would be exemplary in nature. Unfortunately, the verdict form in the violation of the Virginia Consumer Protection Act count did not contain a blank for the jury to enter a figure for compensatory or actual damages when the jury found a willful violation. The only blank filled in by the jury was the increased amount (here $12,000) which would represent a figure not to exceed three times the actual damages found. It could be argued that the jury found actual damages at some figure above $4,000 and increased it to $12,000 which figure would not exceed three times the actual damages, i.e., $8,000 in actual damages, plus $4,000 increase; however, since the Plaintiff's evidence in this case established $4,000 in actual damages and Defendant's evidence established something less, no compromise figure could have been considered as the increase would exceed the limit of three times the actual damages ($12,000 awarded; this would exceed 3 times any compromise award from $1 to $3,999), such that the actual damages are established at $4,000 in this case upon the evidence and the instructions. The court would also note that the Defendant in its Motion To Set Aside, Section 4, concedes that the verdict under the VCPA claim consisted of three times the compensatory damages of $4,000.

Pursuant to Rule 1:4(k):

A party asserting either a claim, counterclaim, cross-claim, or third-party claim or defense may plead alternative facts and theories against alternative parties, provided that such claims, defenses, or demands for relief so joined arise out of the same transaction or occurrence.

Va. Sup. Ct. R. 1:4(k).

Furthermore, Virginia Code § 8.01-272 states that, "In any civil action, a party may plead as many matters, whether law or fact, as he shall think necessary." Va. Code Ann. § 8.01-272.

In the present case, the plaintiff advanced two alternative theories of recovery based on a single transaction or occurrence. Specifically, plaintiff alleged both fraud and a violation of the Virginia Consumer Protection Act. Both theories were related to the concealment or nondisclosure of a material fact regarding the history of a car purchased from the defendant.

Under the Virginia Consumer Protection Act, a prevailing party is entitled to actual damages which may be increased, if the actions of the Defendant are found to be willful, to a total of not more than three times the actual damages or $1,000, whichever is greater, and attorney's fees.[1] Under a cause of action for fraud a party may recover compensatory damages as well as punitive damages. In the case at bar, the jury found in favor of the plaintiff on both counts and awarded damages for each. The defendant argues that such an award constitutes an impermissible double recovery.

It is well established that the purpose of compensatory damages is to make a tort victim whole. See *Acuar v. Latourneau*, 260 Va. 180, 192 (2000). On the other hand, the purpose of punitive damages is not so much to compensate the plaintiff but to punish the wrongdoer and to warn others. See *Simbeck, Inc. v. Dodd Sisk Whitlock Corp.*, 257 Va. 53, 58 (1999); *Hamilton Dev. Co. v. Broad Rock Club, Inc.*, 248 Va. 40, 45 (1994). Similarly, the purpose behind enhanced damages is to punish the offending party. See *Porter v. Wilson*, 244 Va. 366, 372 (1992). By awarding damages under the VCPA and the plaintiff's fraud cause of action, the jury essentially compensated the plaintiff and punished the defendant twice.

The plaintiff concedes that he should not be able to recover damages under both theories since each claim is based on the same underlying conduct. The plaintiff cites the Supreme Court of Tennessee opinion in *Concrete Spaces, Inc. v. Sender* for its analysis of the interplay between statutory enhanced damages and punitive damages pursuant to a common law claim. *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901 (Tenn. 1999). The Court notes that, "the doctrine of election of remedies is implicated when two inconsistent and irreconcilable remedies are available to the plaintiff to redress a single wrongful act." *Id.* at 906 (citing *Barger v. Webb*, 216 Tenn.

---

[1] Exhibit 1 to Plaintiff's Motion and Argument for Attorney's Fees indicates that counsel for plaintiff would seek $34,183.00 for professional services rendered. Should these fees be awarded, the total award under the VCAP, if the plaintiff were to elect this remedy, would equal $46,183.00 (attorney's fees plus treble damages).

275, 391 S.W.2d 664, 667 (Tenn. 1965); *Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 822 (Tenn. App. 1995)). The purpose of the doctrine is to prevent double redress for a single wrong, and it requires the plaintiff in such a scenario to choose one theory of recovery under which to proceed. *Id.* at 906 (citations omitted).

"When a plaintiff is entitled to both punitive damages in conjunction with a common law claim for relief and to treble damages under a statutory scheme, the majority of jurisdictions employ a version of the election of remedies doctrine to prevent double recovery of enhanced damages. Commentators suggest that two general trends have developed with respect to how and when the plaintiff's election is to be implemented." *Id.* at 908; see generally Lisa K. Gregory, "Annotation, Plaintiff's Rights to Punitive or Multiple Damages When Cause of Action Renders Both Available," 2 *A.L.R. 5th* 449, 459 (1992). "The most prevalent approach allows the plaintiff to submit to the fact finder all theories of recovery, including the standards for both punitive damages and multiple damages. *If the jury (and judge, in some instances) determines that the plaintiff is entitled to both forms of enhanced damages, the plaintiff may request that the amount of damages under each remedy be determined before making an election of which remedy he or she would like the judgment to reflect.*" *Id.* at 908 (emphasis added) (citations omitted).

In this case, the jury as instructed on the elements of two remedies, one under the VCPA and one of fraud, and the jury returned verdicts for the plaintiff under both, the VCPA verdict providing enhanced damages and the fraud verdict providing exemplary damages. The amount of actual damages in each differed; however, the instructions regarding the elements of proof in each differed. The court will award attorney's fees under the VCPA remedy.[2] The court is persuaded by the reasoning in *Concrete Spaces, Inc. v. Sender* in that Plaintiff should now elect between the remedies of the VCPA claim and the fraud claim. Plaintiff has suggested a recovery based on an election of the compensatory damages under the VCPA claim and the punitive or exemplary damages under the fraud claim; however, the court feels that the differing instructions applying to each remedy and the integrity of each verdict compels that the Plaintiff elect between the remedies and not among the findings of the verdicts (Plaintiff suggests selecting the compensatory under the VCPA verdict, the punitive under the fraud verdict, and attorney's fees under the VCPA). Plaintiff is directed to elect the statutory remedy under the VCPA (including attorney's fees) or the common law claim of fraud.

---

[2] This issue was bifurcated and reserved for the court to determine by agreement of the parties prior to trial.

*III. There existed no "consumer transaction" as a matter of law on which to base recovery under the Virginia Consumer Protection Act.*

The defendant asserts that the vehicle was originally titled, not in the plaintiff's name, but rather, in the name of Classic Coach Co., a corporation owned by the plaintiff. Accordingly, the defendant argues that the purchase did not constitute a "consumer transaction" covered by the Virginia Consumer Protection Act.

The Virginia Consumer Protection Act defines a consumer transaction as, "The advertisement, sale, lease, license, or offering for sale or license of goods or services to be used primarily for personal, family, or household purposes. . . ." Va. Code Ann. § 59.1-198. Code § 59.1-197 provides that "It is the intent of the General Assembly that this chapter shall be applied as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code Ann. § 59.1-157.

Incidentally, the Act defines the word "person" as, "any natural person, corporation, trust, partnership, association, and any other legal entity." *Id.* Obviously, the General Assembly did not intend to distinguish between persons and non-persons as suggested by the defendant. As such, the vehicle's title is irrelevant to the applicability of the Act.

Whether the vehicle was to be used for the plaintiff's personal or commercial use, was a question of fact to be decided by jury. Evidence to support the jury's conclusion was introduced at trial, and this court will not disturb the jury's verdict.

*IV. The jury's verdicts are inconsistent.*

The jury was instructed as to what they should consider under each claim, VCPA and fraud, and the instructions differed in that regard. There was evidence by the Plaintiff's expert that the Plaintiff suffered $4,000 in actual damages and evidence by the Defendant's expert that he did not. The jury had a range from $4,000 to $0 with differing instructions on two distinct claims, statutory and common law fraud, and the court cannot find under the circumstances that either verdict is not supported by the evidence or that they are inconsistent given the different claims and the different instructions and burdens applicable to each.

*V. There existed insufficient evidence as to Defendant's net worth and/or ability to respond to a punitive damages award.*

The defendant argues that insufficient evidence regarding the defendant's net worth was introduced at trial to warrant an award of punitive damages.

In *Flippo v. CSC Associates III, L.L.C.*, the defendant argued that the trial court erred in awarding $350,000 in punitive damages against him because there was no evidence of Carter Flippo's net worth. *Flippo v. CSC Associates III, L.L.C.*, 262 Va. 48 (2001). The Supreme Court of Virginia rejected Mr. Flippo's contention the imposition of punitives was improper. *Id.* at 58. The Court held that evidence of a party's net worth is admissible because it is material to the sanction's purpose, to punish and to warn others. *Id.* at 58. The Court further found that, "while evidence of net worth is relevant, the appropriate amount of a punitive damage award can be established by other evidence, and the lack of evidence of the wrongdoer's net worth does not itself defeat the punitive damage award." *Id.* at 58.

The defendant argues that the plaintiff bears the burden of proving net worth or waives the right to receive a punitive damage award. In an April 29, 2002, opinion, Judge Peatross of the Circuit Court of Albemarle County disagreed. See *Kory v. McCluney*, 2002 Va. Cir. lexis 77 at (Va. Cir. Apr. 29, 2002); see also *Markowitz v. Re/Max Preferred Properties*, 42 Va. Cir. 292 (1997). The Court stated that it was not clear under Virginia case law which party bears the evidentiary burden of production with respect to a defendant's financial worth but was inclined to equate said burden with the evidentiary burden imposed on a party facing Rule 11 sanctions. Citing *Kunstler v. Britt*, 914 F.2d 505 (4th Cir. 1990), Judge Peatross noted that, "Rule 11 sanctions are analogous to punitive damages. . . . *Inability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden of the parties being sanctioned to come forward with the evidence of their financial status.*" *Kory, supra* (quoting *Kunstler*, 914 F.2d at 524) (emphasis added). The Court concluded that "any lack of evidence here regarding Defendant's financial worth is solely the fault of the Defendant and will not serve to reduce the punitive awards." *Kory, supra.*

The plaintiff cites a number of court opinions from foreign jurisdictions which support this proposition. See *Grabinski v. Blue Springs Food Sales, Inc.*, 136 F.3d 565, 570 (1998); *Kemezy v. Peters*, 79 F.3d 33, 34 (7th Cir. 1996); *Smith v. Lightningbolt Productions, Inc.*, 861 F.2d 363, 373 (2d Cir. 1988).

The court feels that the better reasoning lies with requiring the Defendant carry the burden of presenting evidence of Defendant's net worth and such was not done here.

## VI. *Improper closing argument by Plaintiff's counsel.*

The defendant argues that counsel for the plaintiff improperly referred to the defendant as being part of a larger "organization" of car dealerships with the intent to inflate the size and wealth of the defendant thereby increasing any potential punitive award. The defendant argues that a mistrial is the appropriate remedy for the cumulative effect of counsel's improper arguments to the jury. See *Maxey v. Hubble*, 238 Va. 607 (1989).

In *Maxey*, the Court held that, "generally a new trial will be denied where improper argument has been checked by the court and the jury has been instructed to disregard the improper statements. If, however, counsel persists in such argument after the admonition of.the court, or if it appears that the unfavorable influence of the argument was probably not wholly removed by the court's action, a new trial may be allowed." 238 Va. at 614 (citing *Rinehart Dennis Co. v. Brown*, 137 Va. 670 (1923)). At trial, the defendant's objection to the above mentioned statements was overruled.

Furthermore, plaintiff points out that nowhere does counsel for the plaintiff state or imply that the defendant belongs to a larger organization of auto dealerships, who may or may not share some or all of the defendants liability. Instead, counsel merely refers to the defendant as an organization, which it is. Defendant left the determination to the jury and did not specifically delineate either the particular size or the worth of the Defendant, assuming there may be some connection. Accordingly, Defendant was not prejudiced by the remarks by Plaintiff and said remarks were within the applicable constraints.

## VII. *There existed insufficient evidence to allow an award of punitive damages against the Defendant, a corporation.*

Defendant states that plaintiff's cause of action for fraud was based upon acts or omissions of the defendant's employees other than directors or officers of the corporation. Defendant admits that compensatory damages may be recovered but that punitive damages are inappropriate under these circumstances.

Citing *Hogg v. Plant*, 145 Va. 175 (1923), the defendant argues that a plaintiff seeking an award of punitive damages from a corporation must allege and prove that the corporation, through its duly appointed officers and/or directors, either (1) participated in the wrongful conduct, (2) authorized the wrongful conduct, or (3) subsequently ratified the unlawful conduct of its employees after obtaining full knowledge of the facts.

Plaintiff responds stating that Jim Schoer and Rhonda Forbes were agents employed in managerial capacities and were acting in the scope of their employment when Mr. Schoer misrepresented the car to be new and approved the sale, even though he knew that the car had been previously titled, and when Ms. Forbes, the title clerk for the defendant, ratified the fraud by processing the title documents. Furthermore, plaintiff alleged in its motion for judgment that the corporation had an established fraudulent business practice, a fact confirmed by the defendant during the defendant's deposition. See Motion for Judgment, ¶ 10-13.

Plaintiff alleged sufficient facts and introduced evidence at trial to support its claim that the defendant participated in the wrongful conduct, authorized the wrongful conduct or subsequently ratified the unlawful conduct of its employees to sustain an award of punitive damages against the corporation.

VIII. *The court's exclusion in limine of post sale conduct of the Defendant resulted in undue prejudice to the Defendant as to the punitive damages award.*

"Generally, on public policy grounds, an offer to settle or compromise a disputed claim is inadmissible in evidence." *Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Capital Corp.*, 249 Va. 426, 438 (1995); see also *Brickell v. Shawn*, 175 Va. 373, 380 (1940); *Hendrickson v. Meredith*, 161 Va. 193, 205-06 (1933). The public policy behind this rule is to prevent the trier of facts from presuming the defendant's liability from his desire to dispose of the litigation, and to prevent prejudice to the plaintiff by depicting him as someone unwilling to accept the opposition's good faith effort to resolve the situation in question.

Statements regarding an offer made by the defendant to repurchase the vehicle were properly excluded by this Court following a pre-trial hearing on the matter. It is not now necessary to revisit this issue.

*IX. The amount of the punitive damages award is excessive and should be set aside or remitted under Virginia Code § 8.01-383.1.*

Finally, the defendant argues that the amount of the punitive damages award is excessive and should be set aside or remitted pursuant to Virginia Code § 8.01-383.1. "While a trial judge may not arbitrarily substitute his opinion for that of the jury, he has both the power and the duty to correct a verdict which he finds so excessive as to shock the conscience of the court or to compel the conclusion that the verdict was the product of passion or prejudice or some misunderstanding of the facts or the law." See *Hogan v. Carter*, 226 Va. 361 (1983).

The defendant highlights that the punitive award was 25 times larger than the compensatory award under the VCPA and 53 times larger than the compensatory award under the plaintiff's fraud claim. While the plaintiff admits that there is no bright line rule or mathematical formula to determine excessiveness, it contends that the amount of punitive awarded should bear some reasonable relationship to the actual damages sustained and to the measure of the punishment required. *Philip Morris, Inc. v. Emerson*, 235 Va. 380, 414 (1988).

Interestingly, the defendant cites a number of cases where punitive damage awards were held not to be excessive, apparently to establish an acceptable ratio of compensatory damages to punitive damages. In one such case relied upon by the defendant, the Supreme Court of Virginia upheld a punitive award of $200,000 where the compensatory damages were only $20,000. The ratio in this particular case is only ten to one; however, the defendant fails to realize that the punitive damages exceeded the compensatory damages by $180,000 whereas the punitive damages in the present case only exceed the compensatory damages by $96,000.

In another case relied upon by the defendant, the Supreme Court of the United States identified seven factors which are relevant to determining an appropriate measure of punitive damages: (a) whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that has actually occurred; (b) the degree of reprehensibility of the defendant's conduct and the duration of the conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct; (c) the profitability to the defendant of the wrongful conduct and the desirability of removing that profit and having the defendant also sustain a loss; (d) the financial position of the defendant; (e) all of the costs of litigation; (f) the imposition of criminal

sanctions on the defendant; and (g) the existence of other civil awards against the defendant for the same conduct. See *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991).

These factors advanced by the defendant only further justify the punitive award returned by the jury. Pursuant to factor (e), all the costs of litigation are to be factored into any punitive award. In the case at bar, this would include the attorney's fees which would otherwise be available under the VCPA. If the attorney's fees as submitted are subtracted from the punitive award, we are left with $65,817.00 ($100,000.00 minus $34,183.00).

When you take into consideration the duration of the defendant's conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct and the underlying purpose of a punitive damage award, which is to punish the defendant and to warn others, $65,000 is hardly so excessive such that it would shock the conscience of the court or compel the conclusion that the verdict was the product of passion or prejudice or some misunderstanding of the facts or the law.

As the United States Supreme Court stated in *Cooper Industries, Inc. v. Leatherman*, 532 U.S. 424 (2001), despite the broad discretion that states possess with respect to the imposition of criminal penalties and punitive damages, the Due Process Clause of the United States Constitution, Amendment XIV, imposes substantive limits on that discretion. That clause makes the prohibition against excessive fines and cruel and unusual punishment found in Amendment VIII applicable to the states. Courts evaluating a punitive damage award should consider (1) the degree or reprehensibility of the defendant's misconduct, (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

Defendant in this case admitted that not just in this case, but in all cases, odometer disclosures are not made to customers on the title. This is in violation of the Federal Odometer Act, and the jury could certainly have inferred that the purpose for making the odometer disclosure by other means, was to prevent this customer from seeing a title to the automobile which would clearly conflict with the disclosures made by the salespersons. There can hardly be a greater disparity in any other commercial endeavor than the disparity between a "new" item and a "used" item. The more valuable the item, obviously the greater resulting harm if one pays the "new" price for a "used" item.

The harm or potential harm to the Plaintiff is fairly established by the facts of this case in that attorney's fees have been documented at $34,183.00 and, due to the "specialty" of the item involved, an expert had to be hired and paid and the diminution in value on the item was established at $4,000 by the expert and the verdict. The monetary disparity between the harm or potential harm and the exemplary damages here is found by subtracting something over $38,183.00 from $100,000 for a maximum net of $61,817.00. The difference between the exemplary damages awarded by the jury and any authorized civil penalties (here VCPA) results in a lower net figure as the VCAP would authorize enhanced compensatories of $12,000 plus attorney's fees of $34,183 as compared to $100,000 in exemplary damages for a difference of $53,817. Notwithstanding the enhanced compensatories, the difference would be $61,817 ($100,000 minus $38,183).

If one of the purposes for punitive damages is to deter the wrongdoer from future transgressions, the penalty has to be severe enough to act as said deterrent. Here, the jury could infer from the nature of the business of the Defendant that a number of transactions take place over the course of a year and, unless the penalty were severe enough, consideration could easily be given by the Defendant to sacrificing a few losses for overall potential gain.

Again, considering the tests of the *Pacific Mut. Life Ins. Co.* case and the *Cooper Industries, Inc.* case, the court does not find the exemplary damages award in this case excessive and does find it rational in light of its purpose to punish what has occurred and to deter its repetition.

Counsel for Defendant is requested to contact the court within fifteen days of the date of this letter if he wishes to have a hearing on the amount of the attorney's fee submitted by counsel for the Plaintiff. If no contact within the specific time or if counsel for Defendant notifies the court he does not intend to contest the amount, the court will fix the amount at $34,183.00. Once the attorney's fee is established, Plaintiff will have to elect and provide a properly endorsed order reflecting the opinion of the court as herein set forth.