Present:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons,
          and Agee, JJ., and Compton, S.J.

XSPEDIUS MANAGEMENT CO. OF
VIRGINIA, L.L.C.

v.  Record No. 041720  OPINION BY JUSTICE CYNTHIA D. KINSER
                                        April 22, 2005
ALBERT J. STEPHAN, ET AL.

                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Stanley P. Klein, Judge


     In this action for a continuing trespass on real

property, the dispositive issue is whether there was

sufficient evidence to support the jury's award of punitive

damages.  Because the defendant did not act with such

recklessness as to evince a conscious disregard of property

rights, we will reverse the circuit court's judgment

awarding punitive damages.

     Albert J. and Helene Stephan (the Stephans) own a

parcel of real estate located on Hidden Road in Vienna,

Virginia.  The Stephans purchased the property in 1987 and

have lived there continuously since then.  In the fall of

1999, they discovered that workers were installing an

underground fiber optic line on their property.  The line

installation was completed "over [a] few months in [19]99

and 2000."  The line traverses the Stephans' property for a

distance of approximately 218 feet.  At the widest point,

the fiber optic line is approximately 15 feet inward from the boundary of the property.[1]

The Stephans commenced an action for trespass against the company that had installed the fiber optic line, but the company filed for bankruptcy shortly thereafter. Subsequently, Xspedius Management Company of Virginia, L.L.C. (Xspedius), purchased assets of the bankrupt company. Those assets consisted of, among other things, 4,700 miles of fiber optic lines, including the line at issue in this case. During the negotiations for the sale, Xspedius inquired about any known encroachments by the fiber optic lines. It received a list showing five encroachments affecting about 12 property owners; however, the encroachment on the Stephans' property was not on the list. Xspedius became aware of the encroachment of the fiber optic line on the Stephans' property in October 2002.

After learning that fact, Xspedius negotiated with the Stephans in order to compensate them monetarily for the trespass on their property. The negotiations stalled in April 2003. At about that time, the Stephans filed this action for trespass against Xspedius.

---

[1] Apparently, there was a right-of-way where the fiber optic line could have been installed without encroaching on the Stephans' property.

In their motion for judgment, the Stephans alleged that the continuing trespass by Xspedius' fiber optic line on their property had diminished the value of their real estate, had caused a loss of use of the property, and had damaged the landscaping. The Stephans sought compensatory and punitive damages. Approximately three weeks before trial, the Stephans, in a letter from their attorney to counsel for Xspedius, directed Xspedius to cease and desist from its continuing trespass and to remove its property and equipment from the Stephans' property.

At trial, both after the close of the Stephans' evidence and at the close of all the evidence, Xspedius moved to strike the claim for punitive damages. The court took the motion under advisement and allowed the action to go to the jury. The jury returned a verdict in favor of the Stephans and awarded them $15,000 in compensatory damages and $5,000 in punitive damages.

In a post-trial motion to strike the claim for punitive damages and to enter partial summary judgment in its favor, Xspedius argued, among other things, that the Stephans' sole ground to justify an award of punitive damages was Xspedius' failure to remove the fiber optic line but that, in this case, no reasonable person could conclude that the failure to do so was coupled with any

3

"fraud, malice, oppression, or other special motives of aggravation," PGI, Inc. v. Rathe Prods., Inc., 265 Va. 334, 345, 576 S.E.2d 438, 444 (2003), which Xspedius argued are necessary elements for an award of punitive damages. The circuit court denied Xspedius' motion and entered judgment for the Stephans in accordance with the jury verdict. The court reasoned that from October 2002, when Xspedius learned of the encroachment on the Stephans' property, until April 2003, when this action was filed, Xspedius was "on notice of an ongoing trespass," and could have taken some action to end the trespass, but elected not to do so. We awarded Xspedius this appeal.

On appeal, Xspedius challenges the award of punitive damages. The dispositive issue is whether the circuit court erred by refusing to strike the Stephans' claim for punitive damages. Xspedius argues that the evidence was insufficient as a matter of law to sustain an award of punitive damages because, during the time frame after it learned of the encroachment until this action was filed, it attempted to negotiate a settlement of the matter with the Stephans. Thus, according to Xspedius, it did not act in reckless disregard of the Stephans' property rights. In response, the Stephans argue that they "presented evidence that [Xspedius] knew it was trespassing, had an alternative

4

to the trespass, knew the [Stephans] did not want the continuing trespass, and considered cessation of the trespass to be expensive."

To decide the issue before us, we apply well-established principles of appellate review. "When parties come before us with a jury verdict that has been approved by the trial court, they hold the most favored position known to the law." Stanley v. Webber, 260 Va. 90, 95, 531 S.E.2d 311, 314 (2000); accord Virginia Polytechnic Inst. & State Univ. v. Interactive Return Serv., 267 Va. 642, 650, 595 S.E.2d 1, 5 (2004). "The trial court's judgment is presumed to be correct, and we will not set it aside unless the judgment is plainly wrong or without evidence to support it." Stanley, 260 Va. at 95, 531 S.E.2d at 314; Code § 8.01-680. We view the evidence and all reasonable inferences fairly deducible from it in the light most favorable to the prevailing party at trial, the Stephans. Evaluation Research Corp. v. Alequin, 247 Va. 143, 147, 439 S.E.2d 387, 390 (1994).

"Punitive or exemplary damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others." Giant of Virginia, Inc. v. Pigg, 207 Va. 679, 685, 152 S.E.2d 271, 277 (1967);

5

accord Hamilton Dev. Co. v. Broad Rock Club, Inc., 248 Va. 40, 45, 445 S.E.2d 140, 143 (1994).  The purpose of punitive damages "is not so much to compensate the plaintiff but to punish the wrongdoer and to warn others." Hamilton Dev. Co., 248 Va. at 45, 445 S.E.2d at 143. Accordingly, punitive damages are generally not favored and "should be awarded only in cases involving the most egregious conduct." Bowers v. Westvaco Corp., 244 Va. 139, 150, 419 S.E.2d 661, 668 (1992).  " '[W]here the act or omission complained of is free from fraud, malice, oppression, or other special motives of aggravation, damages by way of punishment cannot be awarded, and compensatory damages only are permissible.' " Wright v. Everett, 197 Va. 608, 615, 90 S.E.2d 855, 859 (1956) (quoting Wood v. American Nat'l Bank, 100 Va. 306, 316, 40 S.E. 931, 934 (1902)); accord PGI, 265 Va. at 345, 576 S.E.2d at 444; Baker v. Marcus, 201 Va. 905, 909, 114 S.E.2d 617, 621 (1960).

We conclude that, in this case, the evidence was insufficient as a matter of law to support an award of punitive damages.  As Xspedius pointed out, the sole basis for the Stephans' claim for punitive damages was Xspedius' failure to remove the fiber optic line as soon as it learned about the encroachment; Xspedius was not the entity

that committed the initial trespass on the Stephans' property when the fiber optic line was installed. Xspedius became aware of the trespass at issue in October 2002, after it had purchased many miles of fiber optic lines. Xspedius then negotiated with the Stephans to compensate them monetarily for the encroachment on their property. Although the Stephans testified that they always wanted the fiber optic line removed from their property and had never changed their position in that regard, they did not dispute the testimony of an Xspedius employee that the company had attempted to negotiate in good faith to compensate the Stephans for the encroachment. The employee stated, "From the time [Xspedius] became aware of [the encroachment] in October of 2002 up until three weeks ago, [Xspedius was] never asked to move it. [Xspedius was] simply asked for money."

When the negotiations stalled, the Stephans filed this action, but they did not specifically seek injunctive relief to require the removal of the fiber optic line from their property. In fact, the letter directing Xspedius to cease and desist from its continuing trespass was not sent until approximately three weeks prior to trial. Upon receiving the letter, Xspedius contacted a construction

firm to begin the engineering work that would be necessary to remove the fiber optic line from its present location.

As Xspedius argues, the facts in this case are analogous to those in Norfolk & Western Railway Co. v. A.C. Allen & Sons, 122 Va. 603, 95 S.E. 406 (1918). There, the defendant continued to use the plaintiffs' water supply after this Court had affirmed a judgment for the plaintiffs. Id. at 606-08, 95 S.E. at 406-07. The defendant did so because it needed time to ascertain where a new supply of water could be obtained. Id. at 616, 95 S.E. at 410. We concluded that

> [t]he evidence in the case [did] not show that the [defendant] was actuated by malice, wantonness or oppression, or that there was any fraud on its part, or that it was guilty of any gross negligence or recklessness, or that its action in continuing to take the water . . . evinced any intention on the part of the [defendant] to disregard the rights of the [plaintiffs], or to defy the law of the land.

Id. at 616-17, 95 S.E. at 410. In the absence of one of these situations, the plaintiffs were not entitled to recover punitive damages. Id. at 617, 95 S.E. at 410.

In contrast, we held that the evidence presented in Hamilton Development was sufficient to support an award of punitive damages for a trespass to real property. 248 Va. at 45, 445 S.E.2d at 143. There, the defendant had been warned about 12 months before the trespass that the

8

plaintiff owned the property at issue.  Id.  The defendant received another notice conveying the same information but ignored it, and proceeded to clear and grade the plaintiff's property over a seven-day period.  Id. at 42, 45, 445 S.E.2d at 142, 143.  We concluded that the defendant "acted with such recklessness or negligence to evince a conscious disregard of plaintiff's property rights."  Id. at 45, 445 S.E.2d at 143.

As in Norfolk & Western Railway, the evidence in this case, viewed in the light most favorable to the Stephans, did not demonstrate that Xspedius, by failing to remove the fiber optic line as soon as it learned of its encroachment on the Stephans' real estate, acted with such recklessness as to evince a conscious disregard of the Stephans' property rights.  Thus, we hold that the circuit court erred in refusing to strike the punitive damage claim.

For these reasons, we will reverse that portion of the circuit court's judgment awarding punitive damages to the Stephans.[2]

Reversed in part,
and final judgment.

---

[2] In light of our decision, it is not necessary to address Xspedius' remaining assignments of error.

9