PRESENT: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and Kinser, JJ., and Whiting, Senior Justice

CARDINAL HOLDING COMPANY, ET AL.

                                        OPINION BY
v.  Record No. 990014     SENIOR JUSTICE HENRY H. WHITING
                                        November 5, 1999
JOHN F. DEAL, ET AL.


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    A. Bonwill Shockley, Judge

     This is an appeal of a sanctions award against an attorney and the law firm that employed him.  In accord with familiar appellate principles, we will state the evidence in the light most favorable to the prevailing party.

     Cardinal Holding Company (Cardinal) and others, filed a legal malpractice action against John F. Deal & Associates, a law partnership, and two of its lawyers, John F. Deal and Rhonda Cobler-Wells (collectively, Deal).  The plaintiffs sought damages in excess of 24 million dollars for Deal's acts of alleged legal malpractice while representing Alvin Q. Jarrett and, later, his executors, T. Roy Jarrett and Harry W. Jarrett. The professional law corporation of Ayers & Stolte, P.C., by Robert H. Smallenberg, one of its members (collectively, Ayers), prepared and signed the motion for judgment and subsequent pleadings that eventually gave rise to the award of sanctions against them.

Charles E. Ayers, Jr., one of the principals in Ayers & Stolte, P.C., was associated with Alvin Jarrett in a number of business ventures. He and law firms in which he was a principal were also Alvin Jarrett's legal counsel in various matters. In July 1990, Deal replaced Mr. Ayers and his law firm as Alvin Jarrett's legal counsel in certain of these matters. Deal's representation continued until Alvin Jarrett's death in March 1991. Thereafter, Deal represented the executors of Jarrett's estate until some time in 1991 or 1992.

In June 1993, Mr. Ayers and two of his related corporations executed settlement agreements with the executors of the Jarrett estate. As a part of the first agreement, Mr. Ayers agreed to assist in the liquidation of the Jarrett estate including "the prosecution of the potential malpractice action against John F. Deal, Esquire, [and] his law firm."

Also in 1993, on a date not disclosed in the record, Mr. Ayers filed a malicious prosecution action against Mr. Deal in the Circuit Court of Henrico County. The action was based on Mr. Deal's cooperation with the Commonwealth's Attorney of Henrico County in the prosecution of Mr. Ayers for alleged criminal conduct in his representation of Alvin Jarrett. Mr. Ayers and his counsel filed pleadings in the malicious prosecution action in violation of the sanctions statute, and the court required them to pay Mr. Deal $4,958.04 as sanctions

2

to reimburse him for his costs and attorney's fees in defending the action.

When the executors decided that they did not want to pursue the malpractice claim against Deal, a second agreement was negotiated in February 1997 in which the claim was assigned to Mr. Ayers and two corporations in which he was a principal. Paragraph 14 of the second agreement provided that "the rights of either party herein may not be assigned without the prior written consent of the other party."

Shortly after the second agreement was signed, Mr. Smallenberg wrote a letter to Stephen G. Test, counsel for the executors, asking that paragraph 14 of the amended settlement agreement be deleted. Mr. Test not only refused to do so, but he also reminded Mr. Smallenberg that Test's clients would "object to the Agreement or any rights conveyed under the Agreement being assigned without our consent."

In spite of this, the claim was assigned by Mr. Ayers and his corporations to Cardinal. Thereafter, this action was filed by Ayers not only in Cardinal's name as assignee, but also in the Jarretts' names without their knowledge or consent or that of their counsel.[1]

---

[1] Ayers named T. Roy Jarrett and Harry W. Jarrett, co-executors of the estate of Alvin Q. Jarrett, "Estate of Alvin Q. Jarrett, and Alvin Q. Jarrett, deceased" (collectively, the Jarretts) as

3

Although the motion for judgment was filed on March 21, 1997, Mr. Smallenberg delayed service of process on Deal for almost a year. Mr. Deal learned that the action had been filed before he was served with process and began preparations to defend it.

After Mr. Smallenberg finally had process served on March 20, 1998, Deal responded on April 10, 1998 with a grounds of defense, a special plea in bar, and a counterclaim against Cardinal for malicious prosecution. Paragraph 3 of Deal's counterclaim alleged that "[Cardinal] filed the Suit with notice, actual or constructive, that legal malpractice claims are non-assignable in the Commonwealth of Virginia. [Cardinal], as purported assignee, has no basis in law to bring the Suit." Hence, Deal sought sanctions.

At a hearing on June 10, 1998, more than 55 days after service of the counterclaim on counsel for Cardinal, the court permitted Cardinal to file a late response to the counterclaim. Cardinal denied the allegations of paragraph 3 of the counterclaim in its grounds of defense.

---

plaintiffs. When the Jarretts' counsel learned of this and objected thereto, the court advised the parties that it would sustain the Jarretts' motions to dismiss them as parties plaintiff and for sanctions against Ayers. Since there is no order in this record reflecting those rulings, we do not consider either assignment of error raising issues as to the award of sanctions to the Jarretts.

4

On the same day, the court heard argument on Cardinal's motion to nonsuit its malpractice action against Deal and Deal's opposition thereto because of the pendency of its counterclaim. The court took this issue under advisement. By letter dated July 15, 1998, the court advised the parties that it would sustain Cardinal's motion for a nonsuit, but would hear argument on the motion for sanctions on a date to be agreed upon by counsel and the court.

Thereafter, counsel for Cardinal prepared, and counsel for Deal signed, an order of nonsuit which did not reflect the court's decision to hear argument on the motion for sanctions at a later date. Another circuit court judge entered that order on August 10, 1998.

At a hearing on September 4, 1998, the court overruled Ayers' oral motion to dismiss Deal's motion for sanctions against Ayers based on the ground that the court had lost jurisdiction to impose sanctions, more than 21 days having elapsed since entry of the nonsuit order.[2] After hearing evidence and argument, the court awarded sanctions in favor of Deal against Ayers in the sum of $22,181.17 to reimburse Deal

---

[2] The court sustained the motion to dismiss the sanctions claim against Cardinal and no cross-error was assigned to that ruling.

5

for attorney's fees, costs, and time expended in defense of this

proceeding and "the sum of $10,000 to punish" Ayers.

The sanctions award was based on the following pertinent

provisions of Code § 8.01-271.1 (the sanctions statute):

> Every pleading, written motion, and other paper
> of a party represented by an attorney shall be signed
> by at least one attorney of record in his individual
> name. . . .

> The signature of an attorney or party constitutes
> a certificate by him that (i) he has read the
> pleading, motion, or other paper, (ii) to the best of
> his knowledge, information and belief, formed after
> reasonable inquiry, it is well grounded in fact and is
> warranted by existing law or a good faith argument for
> the extension, modification, or reversal of existing
> law, and (iii) it is not interposed for any improper
> purpose, such as to harass or to cause unnecessary
> delay or needless increase in the cost of litigation.
> . . . .

> An oral motion made by an attorney or party in
> any court of the Commonwealth constitutes a
> representation by him that (i) to the best of his
> knowledge, information and belief formed after
> reasonable inquiry it is well grounded in fact and is
> warranted by existing law or a good faith argument for
> the extension, modification or reversal of existing
> law, and (ii) it is not interposed for any improper
> purpose, such as to harass or to cause unnecessary
> delay or needless increase in the cost of litigation.

> If a pleading, motion, or other paper is signed
> or made in violation of this rule, the court, upon
> motion or upon its own initiative, shall impose upon
> the person who signed the paper or made the motion, a
> represented party, or both, an appropriate sanction,
> which may include an order to pay to the other party
> or parties the amount of the reasonable expenses
> incurred because of the filing of the pleading,
> motion, or other paper or making of the motion,
> including a reasonable attorney's fee.

Ayers' jurisdictional argument is based on the following assignment of error asserted by Ayers:

> The trial court erred in awarding any sanctions to the Jarretts when more than 21 days elapsed after entry of the final order. (Emphasis added.)

Deal responds that (1) neither this nor any other assignment of error relates the alleged jurisdictional defect to the sanctions awarded to Deal, and that (2) in any event, Cardinal remained in the case because it was the defendant in Deal's counterclaim which was still pending when the court awarded sanctions. We need to consider only the first response.

During oral argument, Ayers maintained that the reference in the assignment of error to the Jarretts instead of to Deal was a typographic error which becomes manifest upon reading the text of Ayers' argument on brief. In effect, Ayers seeks an amendment of the assignment of error to correct this alleged typographic error.

In Hamilton Development Co., v. Broad Rock Club, 248 Va. 40, 445 S.E.2d 140 (1994), we said: "Appeals are awarded based on assignments of error. Rule 5:17(c). The language of an assignment of error may not be changed . . . ." Id. at 44, 445 S.E.2d at 143. Accordingly, Ayers is held to the assignment of error as written and, because it fails to relate the jurisdictional question to the

sanctions awarded to Deal, we will not consider the question.

## II

Ayers concedes that legal malpractice actions were not assignable at common law in Virginia.  Ayers claims, however, that it was objectively reasonable for lawyers to believe that the common law in Virginia had been modified in 1977 by the enactment of the following pertinent provisions of Code § 8.01-26:

> Only those causes of action for damage to real or personal property, whether such damage be direct or indirect, and causes of action ex contractu are assignable.

Even if we were to decide that it was objectively reasonable to believe that the statute had modified the common law in 1977, no such belief could have been held after our decision in MNC Credit Corp. v. Sickels, 255 Va. 314, 497 S.E.2d 331 (1998).  In MNC Credit, we held that Code § 8.01-26 "does not abrogate the common law rule which prohibits the assignment of legal malpractice claims in this Commonwealth because the General Assembly did not plainly manifest an intent to do so."  255 Va. at 318, 497 S.E.2d at 333.

We think that had Ayers made the "reasonable inquiry" required of lawyers by Code § 8.01-271.1, the holding in

8

MNC Credit would have been discovered by the time Ayers caused process to be served on March 20, 1998. This was almost a month after the decision in MNC Credit was issued and made public on February 27, 1998. Moreover, Mr. Smallenberg told the trial court that he acquired actual knowledge of MNC Credit when served with Deal's responsive pleadings on April 13, 1998, "at the latest." Those pleadings referred to MNC Credit.

Yet, 58 days later, on June 10, 1998, Ayers prepared and Mr. Smallenberg, acting for the law firm, signed and filed Cardinal's grounds of defense to Deal's counterclaim. In the grounds of defense, Cardinal effectively asserted that it, as the assignee of a legal malpractice action, had the right to maintain the action.

Hence, the trial court did not err in basing its sanctions award on the proposition that Ayers should have known that legal malpractice claims cannot be assigned in Virginia. Therefore, we need not consider the alleged errors in basing the sanctions award on other grounds.

### III

Next, we consider Ayers' argument that since Mr. Smallenberg was the only person who signed the offending pleadings, the court erroneously imposed sanctions on Ayers & Stolte, P.C., Mr. Smallenberg's employer. Ayers thus

9

seeks to limit the scope of the sanctions statute solely to the individual person who actually signed the pleadings.

Code § 1-13 requires that we construe certain statutory language "as set forth in . . . following sections unless this construction would be inconsistent with the manifest intention of the General Assembly."  Code § 1-13.19 directs that the word "'person' shall include any individual, corporation, . . . or other legal entity."  We find no manifest intention in the sanctions statute to limit the application of the word "person" to individuals, thereby excluding corporations like Ayers & Stolte, P.C. See Landmark Communications Inc. v. Commonwealth, 217 Va. 699, 702, 233 S.E.2d 120, 123 (1977) (applying Code § 1-13.19, corporation held a "person" within scope of judicial inquiry and review statute, Code § 2.1-37.13), rev'd on other grounds, 435 U.S. 829 (1978).

Nor does the sanctions statute manifest an intention to abrogate the general rule that a principal is liable for its agent's acts that are performed within the scope of the agency.  E.g., Miller v. Quarles, 242 Va. 343, 347, 410 S.E.2d 639, 642 (1991); United Brotherhood v. Humphreys, 203 Va. 781, 786-87, 127 S.E.2d 98, 101-02 (1962).  Here, as Deal notes, the corporate employer was shown as counsel of record for Cardinal.  Indeed, the offending pleadings

10

bear a printed notation that the pleading was "Prepared By: Law Offices Ayers & Stolte, P.C."

The record also indicates that, in signing and filing these pleadings, Mr. Smallenberg was acting for his employer, Ayers & Stolte, P.C, and within the scope of that employment.  Mr. Smallenberg's act was therefore the act of the law firm since "{t}he act of the agent is the act of the principal."  Harris v. McKay, 138 Va. 448, 457, 122 S.E. 137, 140 (1924).

Thus, the firm itself, a person under the provisions of Code § 1-13.19 and, as such, covered by the provisions of Code § 8.01-271.1, effectively signed the pleadings. Hence, we conclude that the court did not err in awarding sanctions against the law firm of Ayers & Stolte, P.C.

IV

Ayers attacks the computations and amounts of the awards on several grounds.  In reviewing the awards, we apply an abuse of discretion standard.  Oxenham v. Johnson, 241 Va. 281, 287, 402 S.E.2d 1, 4 (1991).

In the first ground, Ayers maintains that the $22,181.17 compensatory award included time and costs incurred in asserting Deal's counterclaim.  However, Ayers does not segregate or identify those amounts and our review

11

of the record indicates that the award was $1,840 less than the fees and costs billed.

Under these circumstances, we are unable to ascertain that the court included these amounts in its award.  Thus, the record is insufficient for us to decide whether the court erred in doing so.

Next, Ayers contends that "[i]t is inconceivable how the defendants racked up in excess of $10,000.00 in attorneys' fees prior to the nonsuit."  Ayers notes that there were no discovery proceedings during the three months between the time the motion for judgment was served and Ayers moved for a nonsuit.  Ayers overlooks the evidence of the time that Deal spent in preparing to defend the malpractice action in the year that elapsed after the action was filed and before Deal was finally served with process.  Moreover, Ayers fails to indicate that any particular charge was excessive.  Under these circumstances, we are unable to say that the trial court abused its discretion in fixing the amount of the compensatory award.

Ayers further argues that the award constituted "improper fee shifting" in that most of the fees claimed were incurred in seeking sanctions, an activity allegedly

12

unrelated to Cardinal's original unwarranted claim.  We turn to the statute to resolve this contention.

In empowering a court to award an "appropriate sanction," Code § 8.01-271.1 also authorizes an award of a reasonable attorney's fee and reasonable expenses "incurred because of the filing of the pleading."  We read the quoted language as permitting not only a recovery of such fees and expenses incurred in defending against an unwarranted claim, but also a recovery of those fees and expenses incurred in pursuing a sanctions award arising out of such a claim.  Scheiderer & Associates v. City of London, 689 N.E.2d 552, 554 (Ohio 1998).  Accordingly, we find no merit in this contention.

Finally, Ayers asserts that the $10,000 award was actually an award of punitive damages and that the elements necessary to support such an award were not established.  We agree with Deal's response that this award was not an award of punitive damages based on a common-law tort, but a part of the sanctions award intended to punish Ayers under Code § 8.01-271.1.

Although punitive damage awards and sanctions awards share the common purpose of punishment and deterrence, Zedd v. Jenkins, 194 Va. 704, 707, 74 S.E.2d 791, 793 (1953) (punitive damages); In re Kunstler, 914 F.2d 505, 522 (4th

13

Cir. 1990), cert. denied, 499 U.S. 969 (1991) (sanctions), the two awards differ in significant ways. Punitive damages are awarded "only when there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of another [or in certain instances] if the acts are done with malice or wantonness." Simbeck, Inc. v. Dodd Sisk Whitlock Corp., 257 Va. 53, 58, 508 S.E.2d 601, 604 (1999)(citations omitted).

In contrast, sanctions are assessed because of a violation of Code § 8.01-271.1 which requires that a lawyer's pleadings, motions, and other papers, as well as oral motions are

> to the best of his knowledge, information and belief, formed after reasonable inquiry, . . . well grounded in fact and . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and . . . [are] not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Hence, the absence of evidence of those elements necessary to support an award of punitive damages does not affect an award of sanctions if, as in this case, the evidence is sufficient to support such an award. In sum, we find no merit in any of Ayers' contentions regarding the amounts awarded as sanctions.

14

For all the above reasons, we will affirm the judgment of the trial court in awarding sanctions in favor of Deal.

<u>Affirmed</u>.