590

## CIRCUIT COURT OF PATRICK COUNTY

William Lockhart Boyce

 v.

Kristen England Pruitt,
Charles P. Hable,
Jeannie Frisco,
Melissa Wyatt Fain,
and Animal Clinic
of Patrick County, P.C.,

July 28, 2010

Case No. LH05-3315

BY JUDGE CLIFFORD R. WECKSTEIN

[T]he doors of this courthouse are open to good faith litigation, but abuse of the judicial process, as in this case, will not be tolerated.

*Snyder v. Internal Revenue Serv.*, 596 F. Supp. 240, 252 (N.D. Ind. 1984) (paraphrasing *Granzow v. Commissioner*, 739 F.2d 265, 269-70 (7th Cir. 1984)) (applying Rule 11 of the Federal Rules of Civil Procedure. "Rule 11 … and Va. Code § 8.01-271.1 are similar in the respects material here." *Oxenham v. Johnson*, 241 Va. 281, 286, n. 4, 402 S.E.2d 1 (1991)).

This suit was legally dead on arrival at the courthouse. It was "not just merely dead, [but] most sincerely dead." Noel Langley, Florence Ryerson, and Edgar Allan Woolf (screenplay), *The Wizard of Oz*, Metro-Goldwyn-Mayer (1939). Just two months before it was filed, the Supreme Court of Virginia, in a case legally indistinguishable from this one, held that the defendants were completely immune from suit. *Lindeman v. Lesnick*, 268 Va. 532, 537, 604 S.E.2d 55 (2004); *see Cardinal Holding Co. v. Deal*, 258 Va. 623, 632, 522 S.E.2d 614 (1999). The Supreme Court in that case relied on "well-established principles." *Lindeman*, 268 Va. at 537. Thus, the reasonable pre-filing inquiry mandated by Virginia Code § 8.01-271.1 would have disclosed that there was no rational basis to believe that this suit was legally viable. *See Nedrich v. Jones*, 245 Va. 465, 471-72, 429 S.E.2d 201 (1993); *Tullidge v. Board of Supervisors*, 239 Va. 611, 614, 391 S.E.2d 288 (1990).

In this opinion, I find that, in filing and maintaining this suit, the plaintiff and his attorney violated Va. Code § 8.01-271.1 and find that both litigant and lawyer should be sanctioned under that statute and set forth the sanctions that will be imposed.

Factual statements in this opinion are, unless context indicates otherwise, the court's findings of fact. The facts are best discussed against the framework of the governing statute.

### *The Statute*

Under Va. Code § 8.01-271.1, "every pleading, written motion, and other paper" filed on behalf of a represented party must be signed by at least one attorney in his or her individual name. That signature is the attorney's certificate that he or she has read the paper and has concluded, after reasonable inquiry, that it is well-grounded in fact and is warranted by existing law or a good-faith argument for extension, modification, or reversal of existing law and is not filed for any improper purpose, such as

to harass, or cause unnecessary delay, or to cause needless increase in the cost of litigation.[1]

Importantly, this statute is not simply aspirational or hortatory. It has teeth: "If a pleading, motion, or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction."[2]

To determine whether a filing violates Va. Code § 8.01-271.1, a court must apply objective standards;[3] it must determine whether the paper "is legally or factually baseless from an objective perspective." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005).

By its enactment of this statute, the General Assembly expressed a public policy of this Commonwealth. *Williamsburg Peking Corp. v. Xianchin Kong*, 270 Va. 350, 354, 619 S.E.2d 100 (2005). This policy is intended to increase respect for the law and confidence in the legal system;

---

[1] Va. Code § 8.01-271.1 (sentence paraphrased. It reads: "The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."); *see Ford Motor Co. v. Benitez*, 273 Va. 242, 251, 639 S.E.2d 203 (2007) (clauses are in the conjunctive; attorney's signature thus certifies compliance with all three; failure to comply with any one subjects attorney to sanctions). Though the language of the Federal Rules is now gender neutral, Va. Code § 8.01-271.1 retains the language used in the 1983 version of Rule 11. Va. Code § 8.01-271.1 was amended in 2008. That amendment, addressing pleadings filed by non-attorney employees of Social Services Departments, is irrelevant to this case.

[2] Va. Code § 8.01-271.1. "Sanction" is a word with two different meanings, "(1) to approve; or (2) to penalize. The word is generally understood as bearing sense 1. Hence, lawyers, who use it primarily in sense 2, are likely to be misunderstood." Bryan A. Garner, *Garner's Modern American Usage* 705 (2003). The noun "sanction," as used in connection with Va. Code § 8.01-271.1 and Rule 11 is used in the second sense, "A penalty or coercive measure that results from failure to comply with a law, rule, or order." *Black's Law Dictionary* 1341 (7th ed. 1999).

[3] *See Taboada*, 272 Va. at 214-15; *Flora v. Shulmister*, 262 Va. 215, 220, 546 S.E.2d 427 (2001); *Flippo v. CSC Assocs. III, L.L.C.*, 262 Va. 48, 65-66, 547 S.E.2d 216 (2001); *Gilmore v. Finn*, 259 Va. 448, 466, 527 S.E.2d 426 (2000). The Fourth Circuit applies the same "objective standard of reasonableness" test under Rule 11. *See Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987).

to deter abuses of the judicial process; and to assure that good-faith claims will be heard and considered. Under this policy, Virginia will not tolerate baseless suits or motions; its courts will protect litigants from the mental anguish and expense of frivolous assertions of unfounded factual and legal claims and against the assertions of claims for improper purposes. Virginia's courts will hold accountable those who flout this public policy. *See Taboada*, 272 Va. at, 215-16; *Gilmore v. Finn*, 259 Va. 448, 466, 527 S.E.2d 426 (2000); *Oxenham v. Johnson*, 241 Va. 281, 286, 402 S.E.2d 1 (1991).

## Background

The plaintiff, William Lockhart Boyce, is a veterinarian. His profession and those who practice it in Virginia are regulated by the Board of Veterinary Medicine. *See* Va. Code § 54.1-3804.

This suit is a sequel to a quasi-judicial proceeding in which that Board — after a formal hearing conducted with all of the safeguards that surround judicial proceedings[4] — found that Boyce had violated statutes and administrative regulations. It placed him on probation and imposed stringent conditions upon his ability to practice.

Boyce had the right to appeal the Board's decision. *See* Va. Code § 2.2-4026 (appeal of right). He chose not to. Sanctions H'rg Tr. Rather, he began to search for a lawyer who would sue the witnesses who had testified against him at the Veterinary Board hearing. Over the course of about a year, he later testified, he spoke with "many attorneys," before he found John W. Swezey, (*id.* at 22) a member of the Virginia bar since 1967, (*id.* at 74) whom he retained to file and prosecute this suit.

Swezey drafted and signed the pleadings, motions, and other papers that were filed on Boyce's behalf. He continued to represent Boyce in this

---

[4] These safeguards included the right to reasonable notice, to the formal taking of evidence and application of the rules of evidence; the right to counsel; the right to submit evidence and cross-examine witnesses; and the requirement that witnesses be under oath and liable to prosecution for perjury for false testimony. Va. Code § 2.2-4020. Other safeguards included the ability to issue subpoenas, make requests for admissions, and conduct depositions, and the right to a presiding officer who had completed a training course and was an active member of the Virginia State Bar who had practiced law for at least five years. Va. Code § 2.2-4022. The evidence against Dr. Boyce was presented by an assistant attorney general. Boyce was represented by experienced and able counsel.

case until some weeks after this court determined that the suit he filed was legally insupportable.

## The Motion for Judgment

In summary, these are the facts alleged in the Motion for Judgment:

Defendants Pruitt, Frisco, and Fain testified before the Board "against the Plaintiff regarding actions by the Plaintiff as a licensed Doctor of Veterinary Medicine";

They knowingly and maliciously testified untruthfully, using exhibits, including photographs, that were untrue and were purposely altered;

Pruitt and Frisco untruthfully testified about the treatment that Frisco's dog received from Boyce and, later, from Pruitt. They testified from photographs that were false, inaccurate, altered, misleading, and manipulated to give the appearance that Boyce carelessly or incompetently cared for the animal. Their false testimony encompassed facts and opinions. Proceedings against Boyce were initiated by Frisco's complaint to the Board about his treatment of her dog;

Fain falsely testified that drugs and controlled substances were inappropriately handled and administered in Boyce's veterinary facility;

Pruitt was employed by defendant Animal Clinic of Patrick County, P.C., under the supervision of defendant Hable. The Animal Clinic and Hable "were aware of and condoned" the actions of Frisco, Pruitt, and Fain.

That is, four of these five claims allege wrongdoing on the witness stand at the Veterinary Board hearing. The fifth claim is that Hable and the Animal Clinic shared responsibility for what other defendants said and did while testifying before the Board.

These allegations, according to the Motion for Judgment, stated a cause of action for conspiracy to injure Boyce in his reputation, trade, business, or profession, under the Virginia Civil Conspiracy Act (VCCA), Va. Code §§ 18.2-499 and 18.2-500. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F.3d 522, 529 (4th Cir. 1997).

The Motion for Judgment sought $300,000 in "general damages" and $500,000 "as punitive damages as a result of [the defendants'] willful, wanton, and malicious actions against the Plaintiff in an attempt to injure or destroy his professional and business interests." Motion for Judgment at 4.

(Punitive damages cannot be recovered under the VCCA. This is because the VCCA provides for treble damages, a fact not mentioned in the Motion for Judgment. Since "trebling of damages is itself punitive in nature," case law holds, a VCCA plaintiff cannot also recover punitive damages. *Tazewell Oil Co. v. United Va. Bank*, 243 Va. 94, 113, 413 S.E.2d 611 (1992). The statute also permits an award of attorney's fees, which Swezey's pleading sought.)

## The Court's Substantive Decision

This court later ruled that those who testified in Boyce's Veterinary Board hearing had "[a]bsolute privilege, sometimes called judicial privilege" and were therefore "accorded complete immunity from liability" for what they said before the Board. Mot. Hr'g Tr. 36; *Lindeman v. Lesnick*, 268 Va. 532, 604 S.E.2d 55 (2004). Boyce and Swezey, through their present counsel, do not dispute the correctness of that ruling.

## Warnings about Sanctions

Shortly after suit was filed, attorney Jane S. Glenn, who represented Frisco and Pruitt, wrote to Swezey, enclosing a copy of the Board's final order, starkly reminding him of his responsibilities under Va. Code § 8.01-271.1 and warning that a motion for sanctions under that statute would be filed if the suit against her clients was not abandoned. Swezey testified that he received that letter and a similar letter from Glenn W. Pulley who, with Martin F. Clark, represents the other three defendants. After receiving those letters, Swezey also testified, he spoke about them with Glenn, or Pulley, or both.

Boyce testified that, when Swezey told him that opposing counsel asserted that the suit had no legal merit and promised to seek sanctions unless it was dropped:

He did not, in response, ask Swezey to take or forego any action or to consider or investigate anything;

Swezey made no recommendation about whether to proceed or to heed the defendants' demand to drop the suit; and

He and Swezey agreed that "we had a good case."

*The Commonwealth Intervenes*

The Commonwealth of Virginia, after obtaining permission to intervene, filed a motion to dismiss this suit, based in part on the absolute immunity of witnesses who testify in a proceeding like that conducted by the Board on Boyce's case. Boyce, through Swezey, filed a pleading replying to the Commonwealth's motion to dismiss. The entire response to the immunity argument reads: "The fifth allegation is denied in that there is no absolute privilege." Response to Motion to Dismiss by Commonwealth of Virginia 1.

The defendants, like the Commonwealth, filed an array of pleadings, motions, and other papers explaining their contention that the suit was not warranted by existing law. These papers were served on Swezey. He discussed them with Boyce, but did not file any written responses, or seek a dismissal or discontinuance of the suit or of Boyce's claims against any defendant.

Neither Swezey nor Boyce has suggested that he relied or relies on a good-faith argument for extension, modification, or reversal of existing law.

Swezey offered no evidence or suggestion that the communications from opposing counsel and the Attorney General caused him to engage in legal research or to hire someone to do so. Boyce offered no evidence that he asked Swezey whether the lawyer had done any research to refute or respond to the assertions by the Commonwealth and the defendants.

A hearing was scheduled. The defendants and the Commonwealth presented their arguments. Swezey responded, briefly and without citation of authority. The court, ruling from the bench, sustained the special pleas and demurrers.

As noted, Boyce did not appeal that decision. He and Swezey, through the attorneys who represent them on the sanctions motions, concede that the court correctly dismissed the suit.

*Appropriateness of Sanctions*

An award of sanctions should never be "routine," *Tonti v. Akbari,* 262 Va. 681, 685, 553 S.E.2d 769 (2001), nor should the threat of sanctions "be used to stifle counsel in advancing novel legal theories or asserting a client's rights in a doubtful case." *Oxenham v. Johnson,* 241 Va. 281, 286, 402 S.E.2d 1 (1991). The decision to impose sanctions should be made only after the most sober consideration. *See Robinson v.*

*McLeod & Co.*, 59 Va. Cir. 154, 162 (City of Roanoke 2002). I have given such consideration to this case.

*Swezey's Responsibility*

Before filing this suit, Swezey performed "a minimal factual inquiry" and, at the very best, "a cursory legal investigation." *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 988 (4th Cir. 1987) ("at the very best" added by this court). That way, as the Fourth Circuit has suggested, lies disaster. *Id.*

A competent lawyer who conducted the reasonable inquiry contemplated by Va. Code § 8.01-271.1 could not reasonably have concluded that those who testified at Boyce's Veterinary Board hearing could be sued for what they said in their testimony. *Morris v. Wachovia Secs.*, 448 F.3d 268, 277 (4th Cir. 2006) (reasonable attorney in like circumstances could not have believed his actions to be legally justified); *see Nedrich*, 245 Va. at 471-72; *Tullidge*, 239 Va. at 614. That, however, was and remained Swezey's position, even when he argued orally against the demurrers, special pleas, and motions to dismiss.

The Supreme Court of Virginia decided *Lindeman v. Lesnick*, 268 Va. 532, 604 S.E.2d 55 (2004), two months before Swezey filed this suit for Boyce. In *Lindeman*, the Court, applying "[w]ell-established principles," held that communications which are made in the course of judicial or quasi-judicial proceedings,[5] material, relevant, and pertinent to the case are absolutely privileged. One who speaks or writes with absolute privilege does so with impunity, free from risk of liability, even for malicious statements or knowing falsehoods. *Id.*

Even if Swezey's initial belief about the scope of absolute privilege had been reasonable, "no such belief could have been held after [the] decision in [*Lindeman*]." *Id.; see Belton v. Sigmon (In re Barbara Rubin Hudson)*, 24 Fed. Appx. 153, 155 (4th Cir. 2001) ("Instead of withdrawing these claims, or correcting any inaccuracies Ms. Hudson … continued to pursue plaintiffs' claims," leading to the proper imposition of sanctions.) In *Cardinal Enterprises*, 258 Va. at 630, the Court pointed out that a

---

[5] *Id.*, 268 Va. at 537, including administrative hearings in which the safeguards that surround judicial proceedings are present; *id.; see also Lockheed Info. Mgmt. Sys. Co. v. Maximus, Inc.*, 259 Va. 92, 101, 524 S.E.2d 420 (2000) (citing *Elder v. Holland*, 208 Va. 15, 22, 155 S.E.2d 369 (1967)).

lawyer who made the reasonable inquiry required by Va. Code § 8.01-271.1 would have discovered "a decision issued almost a month before process was served." *Id*. Swezey had two months.

As Chief Judge Frank Easterbrook has written, "dogged pursuit of a colorable claim becomes actionable bad faith once the attorney learns (or should have learned) that the claim is bound to fail." *In re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985); *see also* W. Hamilton Bryson, *"Motions for Sanctions,"* 30 U. Rich. L. Rev. 1509 (1996).

### *Swezey's Immunity Arguments*

Also bound to fail — and also objectively unreasonable — was Swezey's argument that those who testified against Boyce at the Veterinary Board hearing were protected only by the limited civil immunity of Va. Code § 8.01-581.19:1.

That statute applies only when someone:

1. Furnishes information;
2. To an entity authorized to investigate complaints of physical or mental impairment;
3. That a veterinarian or a practitioner of another listed profession is unable to practice "with reasonable skill and safety" as a result of
 a. "the use of alcohol, drugs, or other substances," or
 b. "any mental or physical condition."

A person who comes within the ambit of this statute is immune from suit unless he or she acted maliciously, in bad faith, or in violation of federal law or regulations. *Id*. I will assume, for present purposes, that the Veterinary Board is an entity covered by this statute.

Neither in the Motion for Judgment nor in any other pleading or paper, however, did Boyce and Swezey allege or imply that any defendant said, or suggested, or furnished information that said or suggested that alcohol, drugs, other substances, or any physical or medical condition affected Boyce's ability to practice. In focusing on the exception to an inapposite immunity, Swezey's "argument creates and attacks a straw man." *See West Alexandria Properties, Inc. v. First Virginia Mortg. & Real Estate Inv. Trust*, 221 Va. 134, 138, 267 S.E.2d 149 (1980).

(Boyce testified that Swezey showed him this statute, and that, though not a lawyer, he understood and relied upon the clear language of the exception. Sanctions H'rg Tr. 29. ("I was shown the statute, the

wording of the statute seemed in common English to fit my case.")
Notwithstanding arguments made in this case, I have difficulty crediting
the idea that a lawyer and a veterinarian could read and understand the
exception without comprehending the statute's scope.)

Nor would a reasonable lawyer in Swezey's position have believed
that enactment of Va. Code § 8.01-581.19:1 abrogated or superseded the
common-law rule of absolute privilege. It is a commonplace that the
common law "will not be considered as altered or changed by statute
unless the legislative intent is plainly manifested." *Couplin v. Payne*, 270
Va. 129, 136, 613 S.E.2d 592 (2005) (quoting *Boyd v. Commonwealth*,
236 Va. 346, 349, 374 S.E.2d 301 (1988)); *see* Va. Code § 1-200. When a
statute does change the common law, "it abrogates the common-law rule
only to the extent that its terms are directly and irreconcilably opposed to
the rule." *Id.* Va. Code § 8.01-581.19:1, rather than being contrary to the
common-law rule, extends the scope of that rule.

### Repeating a Worthless Argument

If a court could somehow be persuaded that Swezey had a
reasonable basis for filing this suit, he still would be subject to Va. Code
§ 8.01-271.1 sanctions for filing a paper reasserting an argument after it
should have become apparent that the argument was meritless. Va. Code
§ 8.01-271.1's "duty of 'reasonable inquiry' arises each time a lawyer files
a 'pleading, motion, or other paper'," *id.*, and the attorney risks sanctions
for further pursing a frivolous cause. *See Salvin v. American Nat'l Ins.*,
281 Fed. Appx. 222, 227 (4th Cir. 2008) ("Indeed, there is nothing novel
in recognizing that an attorney can face sanctions 'for pursuing a case after
it becomes clear that the case is without merit'."); *see also Bontkowski v.
Smith*, 305 F.3d 757, 763 (7th Cir. 2002) (Posner, J.) ("[W]e warn
Bontkowski that, if he persists in this litigation and his suit turns out to be
frivolous, as we believe highly likely, he is courting sanctions.")

As will be remembered, Swezey's response to the Commonwealth's
Motion to Dismiss and to the authorities that the Attorney General cited
was a simple assertion that "there is no absolute privilege." Response to
Motion to Dismiss by Commonwealth of Virginia 1. Swezey had a duty to
withdraw the case when it became clear that he was pursuing a frivolous
action. *See Belton v. Sigmon (In re Hudson)*, 24 Fed. Appx. 153 (4th Cir.
2001). The Fourth Circuit upheld imposition of Rule 11 sanctions for
failure to withdraw an action once it became clear there was no factual
basis for the claim. In an action filed under the Fair Labor Standards Act,

the Plaintiff's attorney, Hudson, relied upon several factual assertions and affidavits of her clients. Through discovery, it was shown that these facts were largely inaccurate. Counsel for the defendants sent a letter to Hudson requesting that she withdraw the claims because the factual inaccuracies rendered the plaintiffs' claims unwarranted. Defendants moved for summary judgment. Hudson did not heed defendants' warning and filed a motion in opposition. The district court granted summary judgment and imposed sanctions against Hudson. *See also Collins v. Walden*, 834 F.2d 961, 965 (11th Cir. 1987) ("When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest."). He failed to do so, failed to make the inquiry that reason obviously required, and blithely filed a new pleading baselessly denying the existence of absolute privilege.

### The Lawyer As "Hired Gun"

Swezey was doubtless doing his client's bidding when he filed and persisted in this suit. That, in no way, insulates him from responsibility for transgressing Va. Code § 8.01-271.1. *See Blair v. Shenandoah Women's Center, Inc.*, 757 F.2d 1435, 1438 (4th Cir. 1985) ("We emphatically reject any suggestion that a lawyer may shield his transgressions behind the simplistic plea that he only did what his client desired.") The concept of lawyer as "hired gun," engaging the law's machinery to carry out the client's wishes — no matter how meritless or meretricious — is antithetical to the concepts that undergird § 8.01-271, and ought to be anathema to a member of the legal profession. *See Hodge v. Klug*, 604 N.E.2d 1329, 1338 (Mass. App. 1992) ("The absurd notion of a lawyer as a hired gun, who will do *anything* a client requests, has never had a place in our profession and must not be tolerated."). A lawyer's duty of zealous representation within the bounds of the law[6] encompasses an obligation to

---

[6] "As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system. . . . A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others." Preamble, Rules of Professional Responsibility; *see* Rule 1.3 and commentary ("Canon 7 stated that 'a lawyer should represent a client zealously within the bounds of the law'."); Rule 3.1.

ascertain that every claim he or she brings is supported by the law[7] and an obligation to dissuade clients from pursing meritless claims. *See id.* Swezey's embrace of Boyce's cause in violation of those duties violated his duties under Va. Code § 8.01-271.1. *See* Sanctions Hr'g Tr. 81-82 (Swezey testified that he reviewed "several statutes and some cases" and decided not to include one or two individuals as defendants after concluding that the evidence was insufficient, but did not identify the statutes, cases, or possible defendants); *see e.g. Cleveland Demolition Co.,* 827 F.2d at 988 (determining, under Rule 11, that a "minimal factual inquiry and cursory legal investigation" gives rise to sanctions).

### Boyce's Actions

Though Swezey was the agent through whom his client commenced and prosecuted this action, Boyce "was the catalyst behind this frivolous lawsuit." *Chevron, U.S.A., Inc. v. Charles,* 763 F. 2d 1184, 1187 (10th Cir. 1985). "The plaintiff did not heed opposing counsel's warnings about [Va. Code § 8.01-271.1] sanctions but proceeded with the case. Rather than a passive victim of counsel's bad judgment, as is often the case when [§ 8.01-271.1] sanctions are imposed, this plaintiff obviously crafted and fully participated in the litigation strategy of this ... case." *Holley v. Guiffrida,* 112 F.R.D. 172, 173 (D. D.C. 1986).

Swezey embraced Boyce's case neither wisely nor well, but there is no question that this meritless cause was, indeed, Boyce's. His desire to strike back at those who testified against him was the *sine qua non* of this litigation, that without which the suit would have neither been brought nor pursued. As he testified, he spent approximately a year, interviewing many lawyers before he could find one, Swezey, willing to file such a suit.

(While on the witness stand, Boyce was asked, over hearsay objections, whether he talked with Michael Goodman, the lawyer who had represented him before the Board "about whether this lawsuit should go forward that you filed, that Mr. Swezey filed for you?" Sanctions H'rg Tr. 43. He responded that "Mr. Goodman said sue 'em." *Id.* at 46. Goodman had participated in a conversation, during proceedings before the Board, in which counsel for the Board said that "One concern I have as Board counsel is that we not put the witness, or any witness in jeopardy for

---

[7] *See Mohammed v. Union Carbide Corp.,* 606 F. Supp. 252, 261 (E.D. Mich. 1985); *see* Rule 3.1, Rules of Professional Conduct.

subsequent litigation against the witness. Can you read between the lines?" Mr. Goodman replied, "Certainly." Board H'rg Tr. 19. I do not credit Boyce's purported quotation of Goodman.)

"This action ... bears every earmark of a spite suit." *Fitzmaurice v. Turney*, 165 S.W. 307, 309 (Mo. 1914). It appears to be part of a multi-front campaign to punish the defendants for engaging in protected speech, *i.e.*, testimony that led the Veterinary Board to sanction Boyce. Such suits cannot be tolerated. *See Renard v. Dade County*, 261 So. 2d 832, 837 (Fla. 1972) ("So-called 'spite suits' will not be tolerated in this area of the law any more than in any other.")

The record of proceedings before the Veterinary Board shows scrupulous adherence to the sort of due process that safeguards judicial proceedings. The witnesses were subpoenaed by the Commonwealth and testified under oath. *See* Sanctions Hr'g Tr. 53-54. Rules of evidence were applied, objections were made and resolved, and Boyce's attorney thoroughly cross-examined the witnesses against him. *See generally* Veterinary Bd. Hr'g Tr. The Board required clear and convincing evidence to make findings against Boyce. It found that clear and convincing evidence, in part, from the testimony of Pruitt, Frisco, and Fain.

Boyce, aware of his right to appeal the Veterinary Board's decision, chose not to do so,[8] thus allowing the Board's legal and factual determinations to become final and binding upon him. *See Weinberger v. Tucker*, 510 F.3d 486, 494 (4th Cir. 2007), *cert denied*, 128 S. Ct. 2938 (2008); *Faison*, 243 Va. at 419.

When an administrative agency, acting in a judicial capacity, resolves disputed issues of fact (a) that are properly before it, and (b) which the parties have had an adequate opportunity to litigate, courts do not hesitate to apply principles of collateral estoppel and res judicata to enforce those decisions. *CDM Enters., Inc. v. Commonwealth*, 32 Va. App. 702, 712 (2000) (citations omitted). *See also* Va. Code § 2.2-4000 *et seq.*

Instead of appealing, Boyce chose to spend the next fourteen months articulating his grievances. On the weekly public radio show he hosted and in interviews with several newspapers, he asserted that he "committed no wrongdoing," and that he was subjected to "one false charge after another." *Id.* at 18-21, 25-26. These statements are relevant to Boyce's motive and intent, as well as to his credibility on the witness stand in this case. Obviously, sanctions under Va. Code § 8.01-271.1 are

---

[8] Sanctions Hr'g Tr. 15.

imposed only for violating that statute's prohibitions, not for exercising First Amendment rights outside of the context of the suit. He retained Swezey to file a meritless suit that in any objective sense, given the finality of the Board's judgment, could not yield real damages.

As the Attorney General noted in his Motion to Intervene/Dismiss:

> The Commonwealth has an interest in ensuring that witnesses who provide truthful testimony under subpoenas issued on behalf of the Commonwealth are free from fear of subsequent litigation regarding their testimony, and the chilling effect that fear may have on such testimony.

Commonwealth's Motion to Intervene/Motion to Dismiss 2.

One who insists upon and orchestrates a suit that cannot succeed and from which no meaningful damages can be awarded cannot escape responsibility under Va. Code § 8.01-271.1. *See Carter v. ALK Holdings, Inc.*, 605 F.3d 1319 (Fed. Cir. 2010).

Boyce's present counsel argue that Boyce, as a nonlawyer, should be absolved of responsibility for understanding "a relatively technical legal issue, namely, common law doctrine of absolute judicial privilege." Plaintiff's Memorandum in Opposition to Defendants' Motion for Sanctions, 8. Boyce, however, was asked on the witness stand whether, after learning of the threat of sanctions "you made your own assessment of whether the litigation should be pursued." He responded — credibly — "I did."

## *Responsibility for Sanctions*

Having determined that sanctions must be imposed, a trial court must exercise its discretion to determine whether they are to be borne by client, counsel, or both and, if by both, in what proportion.

Sanctions "should fall upon the individual responsible for filing the offending document." *Chevron, U.S.A., Inc. v. Hand*, 763 F.2d 1184, 1187 (10th Cir. 1985). When both parties are partially responsible for such a filing, the court "determines the relative culpability of each person and to apportion such sanctions among the offending persons in a manner that reflect the extent and result of each person's individual violations." *Smith v. Our Lady of the Lake Hosp., Inc.*, 135 F.R.D. 139, 152 (M.D. La. 1991), *rev'd on other grounds by Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439 (5th Cir. 1992). When a sanctionable violation is "a coordinated

effort," joint and several liability is entirely appropriate." *Estate of Calloway v. Marvel Entm't Group*, 9 F.3d 237, 239 (2d Cir. 1993). This was a coordinated effort.

· Boyce's *mala fides* were the motive force, the impetus behind, and catalyst for this action. His desires were a *sine qua non* of this improper litigation. If Boyce was the general staff, though, Swezey was the infantry, the cavalry, and the air force. He also was, in a sense, the Benedict Arnold of this campaign, the officer of the court who flouted his duty to ensure that the suit had some reasonable factual or legal basis,[9] who failed to conduct the minimal investigation required of him, and — to carry the analogy one step further — who failed to read the intelligence reports, the latest advance sheets from the Supreme Court of Virginia.

## *Appropriate Sanctions*

The sanctions that a court imposes for violation of Va. Code § 8.01-271.1 must be tailored to the specific case before the court. Among those sanctions may be reasonable attorney's fees and expenses, which must, as the statute says, be "appropriate." Va. Code § 8.01-271.1; *see Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207, 211 (4th Cir. 1988). An award of fees and expenses should take into account both the defense of the sanctionable claim and the pursuit of the sanctions award. *Cardinal Holding Co. v. Deal*, 258 Va. 623, 632, 522 S.E.2d 614 (1999). In this context, "reasonable does not necessarily mean actual expenses and attorney's fees." *Fahrenz*, 850 F.2d at 211. What is "reasonable" must be "considered . in relation with the [statute's] goals of deterrence, punishment, and compensation." *Id.*

The court may, in the exercise of its discretion, impose separate additional sanctions that share with punitive damage awards "the common purpose of punishment and deterrence." *See Cardinal Holding*, 258 Va. at 632-33; *see also Fox v. Fox*, 41 Va. App. 88, 98, 581 S.E.2d 904 (2003). As to the trial judge's discretion, see, for example, *McNally v. Rey*, 275 Va. 475, 481, 659 S.E.2d 279 (2008). Punitive sanctions may be imposed under Va. Code § 8.01-271.1 without proof of the elements necessary to support an award of punitive damages. *Cardinal Holding*, 258 Va. at 633. Considering all of the facts of this case and all of the actions of Swezey

---

[9] *See, e.g.*, Va. Rules of Prof'l Conduct, Preamble: A Lawyer's Responsibilities, R. 3.1 (2000).

and Boyce in this matter, including, but not limited to, the purpose of absolute immunity, and the chilling effect of suits of this nature on potential witnesses, this court, in the exercise of discretion, is satisfied that sanctions to deter and punish must also be imposed. The court is also of the opinion that punitive sanctions should be imposed because of Boyce's and Swezey's mendacity on the witness stand. *See United States v. Grayson*, 438 U.S. 41, 50-55 (1978). Without belaboring the point, I incorporate in my analysis much of what Chief Justice Burger said, in the criminal-sentencing context, in *Grayson*.

These are the sanctions that the court, in the exercise of its guarded discretion and considered judgment, will impose upon Boyce and Swezey. They are jointly and severally responsible for the financial sanctions set forth below, except for the sanctions specified in paragraph 8.

1. Boyce and Swezey shall pay to the law firm of Clement & Wheatley the sum of $14,184 on account of legal services rendered to Melissa Wyatt Fain, Charles P. Hable, and the Animal Clinic of Patrick County, P.C., and costs expended by or on behalf of those clients in this litigation.

2. Boyce and Swezey shall pay to Martin F. Clark, Esquire, the sum of $2,312.50 on account of legal services rendered to Melissa Wyatt Fain, Charles P. Hable, and the Animal Clinic of Patrick County, P.C.

3. Boyce and Swezey shall pay to the law firm of Glenn, Robinson & Cathey the sum of $6,792 on account of legal services rendered to Kristen England Pruitt and Jeanie Frisco and costs expended by or on behalf of those clients in this litigation.[10]

---

[10] Clement & Wheatley's clients were billed more than twice as much as Glenn, Robinson & Cathey's clients. In a written submission accompanying her firm's itemization of fees and costs, Melissa Robinson explained that her partner, Jane S. Glenn, had set the firm's billing policy in this case. "[G]iven the circumstances giving rise to the lawsuit," Ms. Robinson explained — and the court assumes that she refers not only to the Va. Code § 8.01-271.1 violation, but also to the allegations that led to her clients' appearance before the Board — Ms. Glenn wanted the firm's clients, Jeannie Frisco and Kristen England Pruitt, to be able to "avoid significant legal expenses, to the extent possible." The difference in no respect should bear upon the reasonableness of Mr. Pulley's [Clement & Wheatley's] charges and, in fact, in our experience, they appear more than reasonable." Ms. Robinson explained that Ms. Glenn, who died during the pendency of this suit, exercised her billing discretion in the best traditions of the legal profession. The fees charged by Clement & Wheatley are objectively reasonable, as are the fees charged by Glenn, Robinson & Cathey.

4. To the extent not embraced in the amounts specified in the three paragraphs above, Boyce and Swezey shall pay the actual expenses incurred by each of the defendants for transcripts or copies thereof (including transcripts of proceedings before the Board of Veterinary Medicine), for court reporter per diem charges and other court reporter charges, and all other reasonable expenses incurred by each defendant or counsel for any defendant incurred but not limited to:

a. Mileage and parking charges in connection with hearings, meetings, filings, research, and preparation;

b. Photocopying, printing, mailing, and shipping charges, long-distance telephone charges, and fax charges, in the amounts that the lawyers or law firms have billed or, in the normal course, would have billed to their clients;

c. Any charges incurred for service of process;

d. Any other taxable costs incurred.

5. Boyce and Swezey shall pay to the Clerk of the Circuit Court of Patrick County:

a. The actual amounts paid (or owed) by the Clerk to court reporters and for transcripts in connection with hearings in this case. The Clerk has paid $546 to Central Virginia Reporters for the transcript of a hearing held in Roanoke. Boyce and Swezey must reimburse her for that expense. The court's file also contains a copy of a transcript of a hearing held in Stuart. Boyce and Swezey must pay the Clerk any sum that the Clerk has paid, or is obligated to pay, to Court Reporter Ann K. Nichols in connection with this hearing and transcript;

b. The sum of $750 in lieu of recompense for the expenses caused to the Clerk by this meritless suit and its sanctions phase.

6. Boyce and Swezey shall pay to the Attorney General of Virginia the reasonable expenses incurred by the Office of the Attorney General in this matter to the extent that the Attorney General is able to itemize those expenses. The Attorney General's actual expenses may include, but are not limited to, mileage, toll, lodging, and parking charges in connection with attendance at hearings, printing, and photocopying charges, postage, and courier charges, charges for transcripts or copies thereof (*not* including transcripts of proceedings before the Board of Veterinary Medicine), for court reporter per diem charges and other court reporter charges, and all other reasonable expenses incurred by the Attorney General as counsel for the intervenor in this case. These of course do not include expenses incurred by the Office of the Attorney General in connection with Boyce's hearing before the Board.

7. Boyce and Swezey shall pay the sum of $6,500 as follows:

a. To the Attorney General of Virginia as a punitive sanction and, in effect, to reimburse the citizens of the Commonwealth of Virginia for legal services rendered to the Commonwealth by the Attorney General as a result of Boyce's and Swezey's violation of Va. Code § 8.01-271.1. Senior Assistant Attorney General Pedrotty asserted on the record that, if this court had allowed this groundless suit to proceed, the Commonwealth's ability to regulate health professions would have been seriously undermined. The Commonwealth's argument demonstrates the public policy rationale for the immunity that barred the suit. To allow a suit like this to proceed, the Attorney General argued, would have a chilling effect on persons (particularly professionals) who might be called upon to testify before health regulatory boards. No one can know, of course, the degree to which the Attorney General's fears might have been realized, but the concern was legitimate, and of a magnitude that demanded response from the Attorney General. It is appropriate and consistent with the purpose for which the General Assembly adopted Va. Code § 8.01-271.1 for Boyce and Swezey to share in the cost of the Commonwealth's response to the suit.[11] The court asks Mr. Pedrotty to determine whether there is any legal bar to the Office of the Attorney General receiving this payment and, if not, whether the Attorney General is required to pay such funds over for deposit in the General Fund, without the Attorney General's Office being able to use the funds for its own proper purposes;

b. If the Attorney General is legally barred from receiving such funds, or would be required to simply pass the funds through to the general fund, this sum will be paid, as a fine, to the Clerk of the Circuit Court of Patrick County.[12]

---

[11] *See United States Gov., ex rel. Houck v. Folding Carton Admin. Comm.*, 121 F.R.D. 69, 70 (N.D. Ill. 1988) ("Making an assertion, or in this case filing suit against potentially immune defendants, in the hope that they will turn out to not be immune, is unacceptable. Rule 11's purpose of deterring harassing litigation is highlighted in the present case because judicial immunity is itself a principle which seeks to deter the chilling effects of lawsuits." (Citation omitted.)

[12] *See Taboada*, 272 Va. at 216 ($1,000 fine imposed upon lawyer as a sanction under Code § 8.01-271.1); *see also Alcan Aluminum Corp. v. Lyntel Products, Inc.*, 656 F. Supp. 1138, (N.D. Ill. 1987) (court, under Rule 11 orders counsel to pay clerk of court fine of $15,000 for abusing judicial process by filing suit); *Advo Sys., Inc. v. Walters*,

8. Within four months next following the date of this letter-opinion, Boyce shall pay each of the defendants the sum of $200; and Swezey shall pay each of the defendants the sum of $200. The court calculates that these payments will leave the defendants whole for fees and expenses since their last submissions of attorney's fee bills.

9. Within twelve months next following the date of this letter-opinion:

a. Boyce must successfully complete six hours of continuing education in veterinary medical ethics. The continuing education credits that he earns for complying with this order cannot in any way or in any year be applied to his continuing education obligation as a Virginia-licensed veterinarian. The courses he takes must, however, be approved for continuing education credit by the Virginia Board of Veterinary Medicine. Within thirty days of completion of a continuing education class (or continuing education classes) in fulfillment (or partial fulfillment) of this requirement, but not less than thirteen months after the date of this letter-opinion, Boyce must file with the Clerk of this court (with a copy to this judge) documentary proof of obtaining such continuing education credit and that the course or courses he took for this purpose were approved by the Board.

b. Swezey must successfully complete six hours of continuing legal education (CLE) that qualifies for ethics credit. The CLE credits that he earns for complying with this order cannot in any way or in any year be applied to his CLE obligation as a Virginia-licensed lawyer. The courses he takes must, however, be approved for ethics credit by the Virginia MCLE Board. Within thirty days of completion of a CLE class (or CLE classes) in fulfillment (or partial fulfillment) of this requirement, but not less than thirteen months after the date of this letter-opinion, Swezey must file with the Clerk of this court (with a copy to this judge) documentary proof of obtaining such CLE credit and that the course or courses he took for this purpose were approved for Virginia MCLE ethics credit.

When fees and costs are to be paid to a law firm, the firm must, of course, reimburse the client for fees and costs the client has paid.

In determining the sanctions to be imposed, the court had before it the affidavits and statements of fees and expenses for the attorneys

---

1110 F.R.D. 426, 433 (E.D. Mich. 1986) (fining client and counsel jointly $1,800 for Rule 11 violation, payable to the clerk of the court).

representing the defendants in this suit. Neither Swezey nor Boyce has made a particularized objection to any of the charges itemized by the defendants' attorneys or to the hourly rates of the defendants' lawyers. *See Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven, Ltd. Pshp.*, 253 Va. 93, 97, 480 S.E.2d 471 (1997). (This is not to suggest that either Boyce or Swezey conceded that sanctions, or any particular sanction, should be imposed.)

Our Supreme Court has identified a number of factors that trial judges may consider in fixing a reasonable attorney's fee in any case. *See Chawla v. Burgerbusters, Inc.*, 255 Va. 616, 623, 499 S.E.2d 829 (1998). Unlike many courts, however, the Supreme Court of Virginia does not require that all of these factors be considered in every situation. *West Square, L.L.C. v. Commun. Techs.*, 274 Va. 425, 433-34, 649 S.E.2d 698 (2007). Trial courts are afforded considerable latitude in the exercise of their discretion in fixing attorney's fees. *Id.* One of the reasons for this latitude, it is said, is that judges are assumed to be familiar with charges rendered in similar cases and for similar services in their locality and with the expertise and reputations of lawyers who appear in such cases. *See Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 178, 623 S.E.2d 889 (2006) (award affirmed; trial judge considered, *inter alia*, "whether the rates charged were consistent with the rendering of similar services in the context of this area or this market"); *Chawla*, 255 Va. at 623; *Westbrook v. Westbrook*, 5 Va. App. 446, 458, 364 S.E.2d 523 (1988) (trial court not unmindful of usual charges in its jurisdiction); *McGinnis v. McGinnis*, 1 Va. App. 272, 277, 338 S.E.2d 159 (1985) (trial court not unmindful of usual charges in its jurisdiction; modest award may be reasonable in circumstances of given case). Expert testimony is not essential to the determination of reasonable attorney's fees. *See Lee v. Mulford*, 269 Va. 562, 565, 611 S.E.2d 349 (2005). The court has brought that knowledge and familiarity to the determination of appropriate sanctions in this case.

Interest at the judgment rate will run from the date that payments are due. Recognizing that this court has taken too long to render this decision—for which I apologize and for which explanation would be irrelevant—I have considered the equities and have concluded that this is the only appropriate manner in which to handle judgment interest.

## The Frisco Counterclaim

Defendant Jeanne Frisco filed a counterclaim, alleging that Dr. Boyce's veterinary negligence caused the death of her dog. Boyce's

special plea of the statute of limitations is well taken, and the court therefore will dismiss the counterclaim.

Frisco argues, ingeniously, that the counterclaim is simply a suit for tortious damage to personal property, governed by a five-year statute of limitations. Va. Code § 8.01-243(B). A dog is, by statute, personal property. *See Kondaurov v. Kerdasha*, 271 Va. 646, 657, 629 S.E.2d 181 (2006). In my view, however, her argument asks the court to depart from established precedent. That is an argument that must be addressed to the Supreme Court of Virginia, rather than to this court. The Supreme Court has held that the three-year contract statute of limitations applies to an action for professional negligence of an attorney[13] and an accountant,[14] despite the fact that each of those suits was framed in tort. Similarly, the essence of Frisco's claim is that Dr. Boyce's professional negligence was a proximate cause of her dog's death. The applicable statute of limitations, I therefore hold, had run before the counterclaim was filed. This decision not only follows state precedent, but seems to be in accord with the majority rule. *See* Cheryl A. Bailey, Annotation, *Veterinarian's Liability for Malpractice*, 71 A.L.R. 4th 811 at *2b.

Will Ms. Robinson, Mr. Pulley, and Mr. Cole please draft, circulate, and tender a duly-endorsed order, consistent with and incorporating this opinion letter. All objections should be noted and will be preserved. If counsel cannot agree on language for a single order that avoids creation of an issue under *Williamsburg Peking Corp. v. Xianchin Kong*, 270 Va. 350, 619 S.E.2d 100 (2005), I will first enter an order on the Va. Code § 8.01-271.1 matters and then enter the order dismissing the counterclaim.

---

[13] *Oleyar v. Kerr*, 217 Va. 88, 90, 225 S.E. 2d 898 (1976).

[14] *Boone v. Weaver Co.*, 235 Va. 157, 365 S.E.2d 764 (1988).