COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Ortiz and Senior Judge Annunziata
Argued at Fairfax, Virginia


AMELIA ELZE

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1358-22-4                      JUDGE ROSEMARIE ANNUNZIATA
                                                    OCTOBER 3, 2023

JEANNETTE LEYTON


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                          Robert J. Smith, Judge

          Alicia Lehnes Summers (Stephanie M. Dahl & Associates, on
          briefs), for appellant.

          Michael J. Shevlin (Shevlin Smith, P.C., on brief), for appellee.


       Amelia Elze failed to stop her vehicle at a red light and rear-ended Jeannette Leyton, forcing

Leyton's vehicle into a third vehicle.  Leyton sued Elze for injuries she suffered in the car accident.

A jury returned a verdict for Leyton, awarding her damages totaling $203,000.  Elze appeals the

trial court's pretrial findings regarding its Rule 4:10 order, the sanctions it imposed for Elze's

violation of the Rule 4:10 order, and its exclusion of an exhibit at trial.  For the following reasons,

we affirm.

                                    BACKGROUND

       "When parties come before us with a jury verdict that has been approved by the trial court,

they hold the most favored position known to the law."  *Colas v. Tyree*, ___ Va. ___, ___ (Jan. 26,

2023) (quoting *Xspedius Mgmt. Co. of Va. v. Stephan*, 269 Va. 421, 424 (2005)).  "[W]e view the

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

evidence and all reasonable inferences fairly deducible from it in the light most favorable" to Leyton as the prevailing party at trial. *Id.* at ___ (quoting *Xspedius*, 269 Va. at 425).

On December 1, 2018, Leyton was stopped at a red light behind another vehicle on her way home from work. Elze hit Leyton's vehicle from behind and propelled it forward into the vehicle in front of Leyton. The car accident caused injuries to Leyton's lower back and head, so she was transported to the hospital. Following her discharge from the hospital, Leyton's symptoms worsened and she began experiencing neck and shoulder pain.

A neurologist diagnosed Leyton with permanent whiplash, caused by the December 2018 car accident, and prescribed steroids and a muscle relaxant. Leyton also received nerve block injections. Leyton regularly experienced significant pain, had difficulty moving her head, experienced headaches, and had persistent lower back pain.

On October 13, 2020, Leyton sued for Elze's negligence. The trial court entered a consent order under Rule 4:10 for Leyton to submit to a medical examination by Dr. Ian Wattenmaker. In relevant part, the trial court's order limited Dr. Wattenmaker's questions of Leyton during the examination to "the medical standard of care associated with the patient/plaintiff's history and any complaints since the plaintiff's deposition in February 2022." The trial court's order also prohibited counsel and Dr. Wattenmaker from referring to the examination as an independent medical examination.

Dr. Wattenmaker conducted the Rule 4:10 examination and issued his written report on June 20, 2022. In his written report, under a heading titled "History of Present Illness," Dr. Wattenmaker noted that he had questioned Leyton about the car accident, including how it occurred and what symptoms she felt afterward. He also inquired about Leyton's past medical history. Dr. Wattenmaker opined, before reviewing Leyton's medical records, that her symptoms at that time could not be anatomically explained by the December 1, 2018 car accident and therefore were

not caused by the accident. Dr. Wattenmaker then reviewed Leyton's medical records and reached the same conclusion—that she did not suffer any permanent injury because of the car accident.

At his deposition, Dr. Wattenmaker explained that one of "the most important aspect[s]" of his examination "was the history [he] obtained from" Leyton. Dr. Wattenmaker asked Leyton whether she had any prior difficulty with symptoms or conditions involving her neck or lower back before the car accident. Dr. Wattenmaker reviewed Leyton's provided history and medical records and determined that Leyton had experienced neck and lower back pain before the car accident. Dr. Wattenmaker also referred to the examination as an independent medical examination more than once during his deposition.

On July 22, 2022, Leyton moved to exclude Dr. Wattenmaker as a witness at trial or to strike portions of his testimony because he had not limited the scope of his examination and questions to events after Leyton's deposition in February 2022 and referred to his examination as an independent medical examination. At a hearing, the trial court found that the express language of the order prevented Dr. Wattenmaker from asking about history and complaints before Leyton's February 2022 deposition. The trial court also found that Dr. Wattenmaker was not permitted to call the exam an "independent" medical examination. When asked to identify segments of the deposition that the court should excise to resolve the evidentiary challenge, Elze identified two sections of Dr. Wattenmaker's testimony that the trial court's ruling affected and believed that those passages could be removed from the report and testimony. Leyton countered that considering the total deposition, it was clear that Dr. Wattenmaker relied on the medical history he inappropriately solicited during the exam.

After reviewing the transcript of Dr. Wattenmaker's deposition, the trial court found that it was not possible to exclude Dr. Wattenmaker's consideration of Leyton's history from the deposition because it was "very clear" that Dr. Wattenmaker's answers were given in relation to his

- 3 -

"treatment history and the history that he took." Thus, the trial court excluded Dr. Wattenmaker's testimony in its entirety.

At trial, Elze stipulated liability for the car accident and the matter proceeded on the issue of damages. Leyton testified that before the accident, she had been self-employed for more than ten years cleaning nine or ten houses and had not experienced any pain while doing this work. After the accident, Leyton cleaned seven or eight houses and experienced head, neck, lower back, and shoulder pain while working. After Leyton took a job caring for one family five days per week, and cleaning two houses one day per week, the level and frequency of Leyton's pain was reduced. Before the car accident, Leyton regularly exercised, taking Zumba and Tae Bo classes, running, and lifting weights multiple times per week. Since the accident, however, she was unable to continue the exercise program she had previously followed.

Although Dr. Wattenmaker's testimony was excluded at trial, Elze introduced several exhibits in her case-in-chief. When Elze sought to introduce Leyton's emergency room records from August 25, 2017, to attack Leyton's credibility, Leyton objected on relevancy grounds, arguing that Elze had stipulated to liability and that the December 1, 2018 car accident caused Leyton's injuries. Leyton asserted that the hospital records from a separate injury could mislead the jury. Elze responded that Leyton's discovery responses either did not disclose the 2017 accident, or if she did disclose the accident, her responses indicated that she did not seek medical attention. The trial court noted that a lot of the inconsistency in Leyton's testimony was due to a "language misunderstanding" in the courtroom and found that the hospital records had insufficient indicia of reliability because Leyton did not speak English well. Thus, the trial court sustained Leyton's objection.[1]

---

[1] Leyton primarily spoke Spanish but attended and participated in her deposition without an interpreter because none was available and she "did [her] best to answer the questions as [she] understood them." At trial, Leyton acknowledged that she was in a car accident on August 25,

- 4 -

The jury awarded Leyton $203,000 in damages. On appeal, Elze argues that the trial court erred in finding that the Rule 4:10 order precluded Dr. Wattenmaker from asking Leyton about her medical history. Elze also argues that the trial court's sanction for the Rule 4:10 violation—the blanket exclusion of Dr. Wattenmaker's testimony—was overbroad and prejudicial. Finally, Elze argues that the trial court erred when it excluded the August 25, 2017 emergency room medical records based on its sua sponte finding that Leyton had communication difficulties.

## ANALYSIS

### I. Interpretation of the Rule 4:10 Order

"[T]rial courts have the authority to interpret their own orders." *Davis v. Commonwealth*, 70 Va. App. 722, 732 (2019) (alteration in original) (quoting *Fredericksburg Constr. Co. v. J.W. Wyne Excavating, Inc.*, 260 Va. 137, 144 (2000)). "This Court 'defer[s] to the trial court's interpretation of its own order.'" *Id.* (alteration in original) (quoting *Leitao v. Commonwealth*, 39 Va. App. 435, 438 (2002)). "That interpretation, however, must be reasonable, and [this Court] will 'apply an abuse of discretion standard.'" *Id.* (alteration in original) (quoting *Bajgain v. Bajgain*, 64 Va. App. 439, 453 (2015)). "The abuse of discretion standard recognizes that a court has a 'range of choice' and that 'its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Payne v. Payne*, 77 Va. App. 570, 590 (2023) (quoting *Galiotos v. Galiotos*, 300 Va. 1, 10 (2021)). "Thus, only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Stark v. Dinarany*, 73 Va. App. 733, 746 (2021) (quoting *Galiotos*, 300 Va. at 11).

---

2017, and went to the emergency room but was released that night. In her interrogatory answers, Leyton stated she had experienced a "rear-end collision in the last five years" and that she suffered from body aches but sought no medical attention afterward. Leyton's treating chiropractor and neurologist testified at trial that they did not have Leyton's August 2017 emergency room records during their treatment.

Elze argues that the trial court erred in finding that the Rule 4:10 order precluded Dr. Wattenmaker from asking Leyton about her medical history. She asserts that the order plainly allowed questions pertaining to the history of Leyton's claimed injuries and that the trial court's interpretation of the order was overbroad and unreasonable. We disagree.

Paragraph 4(d) of the Rule 4:10 order expressly provides that Dr. Wattenmaker was "permitted to only ask questions associated with the medical standard of care associated with the patient/plaintiff's history and any complaints *since the plaintiff's deposition in February 2022*." (Emphasis added). That language can be understood in more than one way and is, therefore, ambiguous. After considering the language and structure of the order, the trial court noted that it "would be more persuaded that the limitation was only applying to complaints if it was broken down into separate sub paragraphs." The trial court found, however, that "if you read [the] sub paragraph . . . with appropriate grammar and sentence structure," the inquiry was limited to history *and* complaints after February 2022. Based on that interpretation of its own order, the trial court found that the limitation applied to the entirety of the subparagraph. We find the court's interpretation was reasonable and, therefore, within the trial court's discretion.

II. Exclusion of Dr. Wattenmaker's Testimony

If a party fails to obey a Rule 4:10 discovery order, a trial court may prohibit the disobedient party from introducing the designated matter into evidence. Rule 4:12(b)(2)(B). "The Supreme Court has made clear that '[a] trial court generally exercises "broad discretion" in determining the appropriate sanction for failure to comply with an order relating to discovery.'" *Stark*, 73 Va. App. at 745 (alteration in original) (quoting *Walsh v. Bennett*, 260 Va. 171, 175 (2000)). "'Because the trial court "exercises broad discretion in determining the appropriate sanction,"' this Court reviews its decision for an abuse of discretion." *Id.* (quoting *Galloway v. Cnty. of Northampton*, 299 Va. 558, 563 (2021)).

Elze argues that the trial court erred in excluding Dr. Wattenmaker's testimony because the sanction was overbroad and prejudicially excluded the presentation of evidence in defense of her case. She also argues that the trial court could have excised only the improper portions of Dr. Wattenmaker's testimony and contends that the record does not support the conclusion that Dr. Wattenmaker's entire testimony was tainted.

We cannot say that the trial court abused its discretion in excluding Dr. Wattenmaker's testimony. Elze identified two passages that she believed could be redacted from the deposition transcript. However, the trial court considered the transcript in its entirety and found that because Leyton's history was the foundation of Dr. Wattenmaker's examination, deposition, and ultimate opinion, there was no way to strike Dr. Wattenmaker's use of Leyton's history in violation of the order. Indeed, Dr. Wattenmaker stated that one of the most important aspects of his examination was the medical history he obtained from Leyton. Dr. Wattenmaker believed it was medically necessary to his physical examination that he obtain Leyton's history, and he used that reported history to correlate physical findings during the examination. Dr. Wattenmaker also directly compared his physical findings during the examination with Leyton's reported history and symptoms and concluded that Leyton's provided history was inconsistent with a cervical spine injury and that she did not suffer a whiplash injury as a result of the December 1, 2018 car accident. As the trial court found, it is readily apparent from the deposition transcript that Dr. Wattenmaker's answers directly related back to the history he took, which violated the express provisions of the agreed order.

"[A]n appellate court should not simply rubber stamp every discretionary decision of a trial court." *Walsh*, 260 Va. at 175. It was, however, within the trial court's discretion to exclude Dr. Wattenmaker's testimony. The trial court found itself without the ability to sufficiently sanitize

the references to Leyton's history after considering the transcript as a whole. Thus, the trial court did not abuse its discretion when it excluded Dr. Wattenmaker's deposition testimony.

III. Exclusion of the August 25, 2017 Medical Records

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Warnick v. Commonwealth*, 72 Va. App. 251, 263 (2020) (quoting *Amonett v. Commonwealth*, 70 Va. App. 1, 9 (2019)). Elze argues that the trial court erred in excluding Leyton's August 25, 2017 emergency room records. Elze asserts that the medical records were relevant because they showed that Leyton made complaints of neck and back pain more than a year before the car accident and thus undermined her credibility. Elze also argues that any language barrier goes to the weight of the evidence, not admissibility. We need not decide whether the trial court abused its discretion by excluding the challenged evidence because any such error was harmless.

"In a civil case, the erroneous exclusion of evidence is reversible error when the record fails to show plainly that the excluded evidence could not have affected the verdict. Thus, [appellate courts] consider the potential effect of the excluded evidence in light of all the evidence that was presented to the jury." *Commonwealth v. Proffitt*, 292 Va. 626, 642 (2016) (quoting *Barkley v. Wallace*, 267 Va. 369, 374 (2004)). The exclusion of relevant, but cumulative evidence, does not constitute reversible error. *Pace v. Richmond*, 231 Va. 216, 227 (1986) (citing *Eason v. Eason*, 203 Va. 246, 254 (1962)).

During cross-examination, Leyton testified that she was in a car accident on August 25, 2017, and went to the emergency room. Leyton testified that after the emergency room providers examined her, she left; Leyton could not remember exactly what the providers did. Leyton acknowledged that she told the providers she experienced neck and back pain immediately after the 2017 car accident. Introducing the challenged medical records would have been cumulative of the

uncontested evidence already before the jury through Leyton's testimony. Leyton conceded that she had reported neck and back pain. Considering Leyton's admission regarding the earlier injury, we find that Elze overstates any impeachment value the medical records carried. We conclude that these cumulative medical records would not have resulted in a different outcome.

## CONCLUSION

We find no reversible error here because the trial court reasonably interpreted its own order, which included limitations on the examination to which the parties agreed. Having found that Elze's expert disobeyed those agreed-upon limitations, the trial court imposed an authorized sanction. Finally, there was no reversible error in the exclusion of cumulative evidence. Accordingly, we affirm the trial court's judgment.

*Affirmed.*